1997-NMCA-117

948 P.2d 1209

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Frederick ELINSKI, Defendant–
Appellant.**

**No. 17115.**

Court of Appeals of New Mexico.

Oct. 14, 1997.

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BOSSON, Judge.

1. Defendant, Frederick Elinski, killed Diego Duran Delaree (the victim), claiming self-defense. Charged with first degree murder, Defendant was convicted of tampering with evidence and second degree murder with a firearm enhancement. *See* NMSA 1978, §§ 30–2–1(B) (1994) (murder), 31–18–16 (1993) (use of firearm), 30–22–5 (1963) (tampering with evidence).

2. On appeal, Defendant argues that the trial court committed reversible error by admitting into evidence two damaging letters in which Defendant had threatened an unrelated third party with violence. We agree that the letters should not have been admitted. We also agree that, in the context of this case, the court's error was unfairly prejudicial to Defendant. Therefore, we reverse Defendant's conviction for second degree murder and remand for a new trial.

## BACKGROUND

3. Defendant did not testify at trial. His previous statements to the police, given during the investigation of the shooting, were admitted into evidence. According to Defendant's statements, he met the victim through Roberto Campos. Defendant had been purchasing cocaine from Campos, but had become concerned that their relationship was deteriorating because Defendant owed Campos money for cocaine. According to Defendant, on the evening of January 16, 1995, he received a call from Campos inviting him to Campos' home in Monte Vista, Colorado. Defendant took a gun with him because he was concerned for his safety. When he arrived at the Campos home, Defendant was asked to accompany Campos and the victim, who was a friend of Campos, south to New Mexico to pick up a car. The three men set off in two vehicles, Campos alone in his truck and Defendant and the victim in Defendant's car. Somewhere south of Tres Piedras on Route 285, Campos pulled over, and Defendant did the same. According to Defendant,

both Campos and the victim pointed guns at Defendant, and Campos told the victim to shoot Defendant. Defendant shot the victim first. Campos then left after cautioning Defendant not to say anything about the shooting, and Defendant returned to Colorado. At trial, Campos denied having been at the scene of the shooting. There were no other witnesses to the incident.

4. At a pretrial hearing, the State presented a motion in limine to permit evidence at trial of other bad acts committed by Defendant. For example, the State sought to introduce evidence that Defendant owed money and had taken cocaine from Campos in the past without paying him. The State justified this evidence under Rule 11–404(B), NMRA 1997 by alleging that Defendant's need for money provided a motive for killing victim. Admission of that evidence is not in dispute on appeal. The State also sought to introduce two threatening letters written by Defendant. At the pretrial hearing, the trial court ruled that it would admit these letters, and they were admitted at trial over Defendant's objection. These letters form the gravamen of Defendant's appeal.

5. The letters made threats to a third party about a rent dispute that occurred one month before the shooting. Defendant had been acting as a caretaker of several cabins, and his job included collecting rent for the owner. In December 1994, Defendant wrote two letters to a tenant, one evicting him for nonpayment of rent and the second threatening to beat the tenant if he didn't pay. The second letter contained the following menacing language: "If you want to talk to me it better be to hand me some cash or get the s—— beat out of you. I'm done f—— with you Art. Cash or blood Art, its your choice— You f—— puss. Hey, I won't even use a bat!"

6. The prosecutor was frank in his reasons for offering these letters: they tended to rebut the claim of self-defense by showing that Defendant had a violent character which made it more likely that Defendant, not the victim, had been the first aggressor. The State did not claim the victim was aware of these letters. During pretrial hearings on the motion in limine, the district attorney attempted to justify use of this evidence by citing *State v. Parish*, 118 N.M. 39, 44–45, 878 P.2d 988, 993–94 (1994). The prosecutor

argued that *Parish* placed a new burden on the State to prove beyond a reasonable doubt that a defendant did not act in self-defense. According to the district attorney, the *Parish* decision permitted him to "chip away" at the self-defense claim by introducing evidence in his case in chief that would show Defendant's character trait for aggression. Unfortunately, the trial court agreed with the district attorney's assessment of the State's burden under *Parish*. The court concluded that the letters would be admitted precisely because they showed Defendant was "just unreasonable," "extremely angry," and "prone to make significant threats of violence." Therefore, the letters permitted an inference that Defendant was less likely a person who acted in self-defense, and more likely a person who would have been the first aggressor.

7. During trial, the court admitted the letters for the stated purpose of showing the aggressive character of Defendant. When defense counsel protested that Defendant's character for violence had not yet been placed in front of the jury or the court, the court responded that Defendant had placed his propensity for violence at issue by the claim of self-defense. The letters were first read into the record and then published to the jury. Defendant contests the legality of that decision.

## DISCUSSION

### Standard of Review

■ 8. Generally speaking, a reviewing court defers to the trial court's decision to admit or exclude evidence and will not reverse unless there has been an abuse of discretion. *See State v. Woodward,* 1995 NMSC 082, ¶ 6, 121 N.M. 1, 4, 908 P.2d 231, 234. However, our review of the application of the law to the facts is conducted de novo. *See State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994). In this case, the trial court determined that a claim of self-defense permitted the prosecution to introduce specific acts of violent character for the sole purpose of showing propensity for violence. This is not the law in New Mexico. Accordingly, the decision to admit the letters was error because it was premised on a misapprehension of the law.

### Claim of Self–Defense Does Not Invite Specific Evidence of Violent Propensity

■ 9. In *Parish*, the Supreme Court neither changed the burden of proof for self-defense nor opened the door to inadmissible propensity evidence. The Court reaffirmed that when a defendant presents some evidence of self-defense that could raise a reasonable doubt in the minds of the jurors, the prosecution has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *See Parish*, 118 N.M. at 44–45, 878 P.2d at 993–94. But this was not new. "It is settled law in New Mexico that the defendant does not have the burden of proving that the killing was an exercise of the right of self-defense." *Id.* at 44, 878 P.2d at 993; *see also* UJI 14–102, NMRA 1997; *State v. Edwards*, 97 N.M. 141, 145, 637 P.2d 572, 576 (Ct.App.1981) (state has the burden of showing that the killing was not in self-defense).

■ 10. Just as the State has long had the burden of disproving self-defense, it is equally clear that, unless invited, the State cannot resort to specific character evidence to satisfy that burden. Generally, Rule 11–404(A)(1), NMRA 1997 prohibits character evidence except "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same." These letters were not offered by Defendant nor were they offered by the State on rebuttal. Nor do we agree with the proposition that merely by pleading self-defense Defendant opened the door to character evidence showing propensity for violence. That point was clearly established by this Court in *State v. Reneau*, 111 N.M. 217, 219, 804 P.2d 408, 410 (Ct.App.1990).

11. In *Reneau*, the trial court erroneously permitted the defendant to be questioned about an earlier unrelated incident in which she had stabbed another man, not the victim. *Id.* at 218–19, 804 P.2d at 409–10. This Court determined that the trial court had erred in admitting specific instances of violence in connection with the *defendant's* character. *Id.* at 219, 804 P.2d at 410. "We do not agree that the character of the defendant should be or is an element of self-defense." *Id.* We further noted that a claim of self-defense is not tantamount to putting one's character at issue, and we concluded:

" 'It would be too attenuated an argument to say evidence of a defendant's reputation for violence indicates a tendency not to fear another person.' " *Id.* (quoting *Johns v. United States*, 434 A.2d 463, 470 n. 11 (D.C.App. 1981)); *cf.* UJI 14–5171, NMRA 1997 (defendant's fear as element of self-defense); *State v. Baca*, 115 N.M. 536, 540, 854 P.2d 363, 367 (Ct.App.1993) (specific instances of a *victim's* prior conduct were not admissible to prove that the *victim* was the first aggressor).

■ 12. Thus, the trial court erred from the very beginning in allowing such prejudicial evidence for precisely the wrong reason: that Defendant more likely did not act in self-defense because he was a man of violent character or propensity. As we shall see, this misapprehension of the law, offered initially by the State, colored what occurred thereafter with respect to the admission of this evidence.

### Rule 11–404(B)

■ 13. Rule 11–404(B) prohibits evidence of other bad acts merely to show the bad character of the accused and a propensity to act in accordance with that character; bad-acts evidence is admissible only if relevant to prove some other issue legitimately in dispute. *State v. Jones*, 120 N.M. 185, 187, 899 P.2d 1139, 1141 (Ct.App.1995), *cert. quashed*, 121 N.M. 57, 908 P.2d 750 (1996). To admit evidence of other bad acts under Rule 11–404(B), the evidence must bear on a material issue, such as intent, identity, or knowledge, other than just criminal disposition. *Jones*, 120 N.M. at 188–89, 899 P.2d at 1142–43; *see also State v. Lucero*, 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App.1992) (evidence whose real purpose is to show defendant's character or disposition to commit the charged crime is clearly inadmissible). The proponent of the evidence must demonstrate its relevancy to the consequential facts, and the material issue, such as intent, must in fact be in dispute. *See Lucero*, 114 N.M. at 492, 840 P.2d at 1258.

14. Relying upon *Woodward*, 1995 NMSC 082, ¶¶ 28–31, 121 N.M. 1, 908 P.2d 231, and *State v. Niewiadowski*, 120 N.M. 361, 363–64, 901 P.2d 779, 780–81 (Ct.App.), *cert. denied*, 120 N.M. 184, 899 P.2d 1138 (1995), the State

argues that these letters would have been admissible under Rule 11–404(B) to prove intent. Because the charge of first degree murder required the prosecution to prove that Defendant acted with the deliberate intention to take away the victim's life, the State offers these letters to show intent. *See* UJI 14–201, NMRA 1997. We do not find that these cases justify use of these letters for this purpose.

15. In *Woodward*, 1995 NMSC 082, ¶¶ 2–5, 121 N.M. 1, 908 P.2d 231, the defendant was convicted of the first degree murder of his wife. The Supreme Court determined that evidence was properly admitted under Rule 11–404(B) regarding the defendant's plan to kill another woman because it was relevant to the requisite mental state for first degree murder. *Woodward*, 1995 NMSC 082, ¶¶ 28–31, 121 N.M. 1, 908 P.2d 231. However, the two incidents were related. The defendant believed that the other woman was responsible for the deterioration of his marriage, and therefore the defendant's hostile acts toward this other woman laid a foundation for his motive in subsequently killing his wife. *Id.*

16. Similarly, in *Niewiadowski*, 120 N.M. at 364, 901 P.2d at 782, this Court allowed evidence of other bad acts involving a violent incident between the defendant and the same victim that occurred only nine days before the victim's death. In that context, we noted that the defendant, who had been charged with first degree murder, had placed intent in issue by claiming that he acted in self-defense. *See id.* We reasoned that evidence of defendant's other bad acts toward the *same* victim was relevant to intent in a way that did not merely show a propensity for violence. *Id.*

17. In this case, no attempt was made either during the preliminary hearing or the State's case in chief to link these letters, written in mid-December 1994, to the formation of a deliberate intent to kill a different person on January 16, 1995. The failure to establish or even identify such a connection distinguishes this case from both *Woodward* and *Niewiadowski*.

18. Even if the prosecutor had attempted "an articulation or identification of the consequential fact to which the proffered evidence is directed," *Jones,* 120 N.M. at 187, 899 P.2d at 1141, we fail to see how evidence of threatening letters written by Defendant to a third party on an unrelated matter one month before the shooting could have been probative of whether Defendant acted with deliberate intent the night of the shooting, except insofar as they evince Defendant's violent character. Therefore, we conclude that the letters would not have been admissible under Rule 11–404(B).

**Harmless Error**

■ 19. The State argues that even if the trial court erred in admitting the letters for the reasons given, the error was harmless. The State offers two grounds: (1) Defendant opened the door to character evidence which would have been admitted in any event at some point in the trial, and (2) the weight of other evidence was so overwhelming that any error was inconsequential. We do not agree with the State's analysis on either count.

20. Defendant did not testify at trial, but his mother, aunt, sister, and brother did testify for him during Defendant's case. Much of their testimony can fairly be described as "good character" evidence of the kind which opens the door to rebuttal by the prosecution. *See* Rule 11–404(A)(1). For example, his brother voiced the opinion that Defendant "would mean no harm to anybody," and his mother stated that her son "would not kill anyone or anything unless he feared for his life."

21. The fundamental flaw we find in the logic of the State's argument is that we cannot know what course Defendant would have followed at trial if the prosecution had not improperly introduced propensity evidence in its case in chief. In this case, Defendant was not left free to choose his defense, but rather had to adjust it to refute the evidence that was improperly admitted before Defendant had presented his case. As we have discussed, unless an accused chooses to place his character at issue, such evidence is not admissible, and in this case Defendant did not place his character at issue until *after* the State had already persuaded the judge to admit the letters. *Cf. State v. Young,* 117 N.M. 688, 692, 875 P.2d 1119, 1123 (Ct.App.

1994) (holding improperly admitted evidence did not become merely cumulative because defendant had attempted to minimize the harm through cross-examination after his objections had been denied).

**22.** We disagree with the State for still another reason. It is true, as the State points out, that when a defendant introduces evidence of peacefulness or other character traits, the prosecution is entitled to rebut that testimony. *See* Rule 11–404(A)(1). However, except on cross-examination, the method of proof is limited to reputation or opinion evidence and does not include inquiry into specific instances of misconduct unless character is an essential element of a charge, claim, or defense. Rule 11–405, NMRA 1997; *see Baca,* 115 N.M. at 540, 854 P.2d at 367 (holding victim's character for violence not essential element of self-defense and not provable by evidence of specific acts). As we have previously discussed, a defendant's character is not an essential element of a self-defense claim. *See Reneau,* 111 N.M. at 219, 804 P.2d at 410; *State v. Montoya,* 95 N.M. 433, 436, 622 P.2d 1053, 1056 (Ct.App. 1981). Therefore the letters, as specific instances of misconduct, would not have been admissible even if the State had waited until rebuttal. *Cf. State v. Ross,* 88 N.M. 1, 3–4, 536 P.2d 265, 267–68 (Ct.App.1975) (holding that state may not introduce extrinsic evidence regarding specific instances of conduct to attack witnesses' credibility under Rule 11–608(B) or 11–613).

**23.** The letters could have been used on cross-examination to rebut the opinions of family members who expressed a belief in the peaceful character of Defendant. *See* Rule 11–405(A). *See generally* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 405.04[1][b] (1997) (response to opinion testimony) [hereinafter Weinstein & Berger]. This type of cross-examination is generally regarded as a method of testing the witness's knowledge and standards for good reputation. *See* Weinstein & Berger, *supra,* § 405.03[2][a]. It would not permit the introduction of the letters into evidence, and as we know, these letters were actually published to the jury.

**24.** The State also argues that, unlike the accused in *Reneau,* 111 N.M. at 219,

804 P.2d at 410, Defendant had already placed his character in issue by asserting a trait for peacefulness in his opening statement. *See* Rule 11–404(A)(1). During opening, defense counsel described Defendant's involvement with drugs and stated that Defendant's family would testify that "[h]e wasn't the kind of a person that would do this kind of thing." Given the context of this statement, the remark may have been referring to drug use rather than the shooting. Moreover, even as early as opening statement the damage had already been done to Defendant when the trial court had ruled before trial that it would admit these letters for the legally erroneous reason of proving Defendant's violent character.

**25.** The State also argues that introduction of the letters was harmless error because they were such a small part of the evidence against Defendant. The admission of evidence is harmless if there is (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) a disproportionate volume of permissible evidence so that the amount of improper evidence could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony. *State v. Williams,* 117 N.M. 551, 559, 874 P.2d 12, 20 (1994). We are mindful of guidance from our Supreme Court that "[e]rror in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (citing *State v. Trujillo,* 95 N.M. 535, 541, 624 P.2d 44, 50 (1981)).

**26.** The State would have us regard these letters as merely an insignificant moment in a long six-day trial. However, as the district attorney observed in his opening statement, this is a case that turned on credibility. This evidence was improperly admitted for the express purpose of portraying Defendant as a man of violent proclivities. The jury's assessment of Defendant's credibility was crucial for him to prevail on a claim of self-defense, and these letters could well have undermined his credibility with the jury. Although there was ample other evidence allegedly showing the need for money as a motive

for the killing, and the act of killing in itself was not in dispute, there was little or no other evidence purporting to show Defendant as a violent character. This may have been the reason the prosecutor fought hard to introduce such otherwise collateral evidence. Indeed, we note from the prosecutor's final argument just how important these letters were to his case. During his rebuttal closing, the prosecutor read again from the letters and stated to the jury that the letter "tells us what this man was capable of one month before he took a human life." The letter "is something that came out of this man's mind and came out of his heart, a letter that he wrote to [the third party] that would scare anybody."

## CONCLUSION

27. We cannot say there was no "reasonable possibility" that these letters did not contribute to Defendant's conviction. *Clark*, 112 N.M. at 487, 816 P.2d at 1109. Accordingly, we reverse Defendant's conviction for second degree murder and remand for a new trial.

28. **IT IS SO ORDERED.**

HARTZ, C.J., and ARMIJO, J., concur.