2005-NMCA-111

119 P.3d 737

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesse Lawrence LENTE, Defendant–
Appellant.**

**No. 23,934.**

Court of Appeals of New Mexico.

June 7, 2005.

Certiorari Denied, No. 29,365,
Aug. 18, 2005.

Corrected, Sept. 7, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Chief Judge.

{1} Defendant was convicted, after a jury trial, of ten counts of criminal sexual penetration of a minor (CSPM), sixteen counts of criminal sexual contact of a minor (CSCM), one count of interference with communications, two counts of bribery of a witness, and one count of resisting, evading, or obstruct-

ing an officer. Defendant raises three issues on appeal: (1) whether the testimony by the physician who examined Victim was more prejudicial than probative, was unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (interpreting the requirements of Rule 702 of the Federal Rules of Evidence), and constituted improper vouching for Victim's testimony; (2) whether the court erred in not permitting the jury to be instructed on the lesser included offense of CSCM for four allegations of digital penetration; and (3) whether the court erred in not permitting defense counsel to fully confront a witness by impeaching her with prior acts of dishonesty. Because we determine that no error occurred, we affirm Defendant's convictions.

### Expert Testimony

{2} Victim testified that Defendant had been molesting her in various ways since she was in second or third grade and that on the morning of the most recent incident, Defendant had made her perform fellatio on him. Victim also testified that she subsequently told a police officer what had happened and was taken first to the hospital, where she was examined and interviewed, and was then sent to the Safe House where she was also interviewed. Following a hearing on the permissible limits of the testimony, Dr. Renee Ornelas, the physician who examined Victim at the hospital, testified that the examination of Victim's genitalia was normal and that this was consistent with what Victim had reported. Defendant was convicted, and this appeal followed.

{3} Defendant asks us to review whether the physician's testimony constituted improper vouching, was unreliable under the standard first set forth in *Daubert*, and was more prejudicial than probative under Rule 11–403 NMRA. "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993). "[T]he threshold question of whether the trial court applied the correct

evidentiary rule or standard is subject to de novo review on appeal." *State v. Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20. A trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law. *See State v. Elinski*, 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. As our Supreme Court summarized in *Torres*, after the United States Supreme Court issued its opinion in *Daubert*, New Mexico also determined that under Rule 11–702 NMRA "it is error to admit expert testimony involving scientific knowledge unless the party offering such testimony first establishes the evidentiary reliability of the scientific knowledge." *Torres*, 1999–NMSC–010, ¶ 24, 127 N.M. 20, 976 P.2d 20.

{4} Defendant argues at some length that this Court should also adopt the reasoning of subsequent federal cases, such as *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), that all expert testimony, not just scientific testimony, should be subject to the *Daubert–Alberico* test. We note, initially, that our Supreme Court has not yet incorporated the holding of *Kumho Tire Co.* into New Mexico law. *See Banks v. IMC Kalium Carlsbad Potash Co.*, 2003–NMSC–026, ¶ 19, 134 N.M. 421, 77 P.3d 1014 (stating, within the context of a workers' compensation case, that "after *Kumho Tire Co.*, we apply *Daubert* somewhat differently than do the federal courts"). *But see Lopez v. Reddy*, 2005–NMCA–054, ¶ 13, 137 N.M. 554, 113 P.3d 377 (2005) (limiting the holding in *Banks*, that *Daubert–Alberico* does not apply to the testimony of a health care provider under the Workers' Compensation Act, to cases "in which the use of experts is subject to particular statutory standards"). Currently, therefore, New Mexico law requires only that the trial court establish the reliability of scientific knowledge, and does not apply the *Daubert–Alberico* standard to all expert testimony. *Torres*, 1999–NMSC–010, ¶ 24, 127 N.M. 20, 976 P.2d 20.

{5} Before trial, Defendant filed a motion in limine to exclude the physician's testimony. In his motion, Defendant stated that he anticipated that the physician would testify that she (1) recorded a patient history, (2) conducted a physical examination of Victim's

genital area, (3) found the examination to be normal, (4) found that it could be that of someone who had not been penetrated, (5) found that tests for disease and pregnancy were negative, (6) found the examination to be completely consistent with the history, and (7) concluded sexual abuse had occurred. Defendant argued that under *Kumho Tire Co.* and *United States v. Velarde,* 214 F.3d 1204 (10th Cir.2000), the trial court must make a determination that all expert testimony, not just scientific testimony, is reliable before it is admitted. In *Kumho Tire Co.,* the Supreme Court made clear, however, that a trial court retains "discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co.,* 526 U.S. at 152, 119 S.Ct. 1167.

{6} Even assuming *Kumho Tire Co.* and *Velarde* apply in New Mexico, we find the trial court did not abuse its discretion in this case. In *Velarde,* the physician concluded that the victim had been sexually abused, even though the physical examination was normal, and stated that when examinations provided normal results she would "base that diagnosis on the child's statements about what had happened to them." *Velarde,* 214 F.3d at 1209. The Tenth Circuit observed that although the trial court appeared to assume that this testimony "fell within the category of testimony in 'ordinary' cases where courts may 'avoid unnecessary 'reliability' proceedings ... where the reliability of an expert's methods is properly taken for granted[,]' ... the court gave no indication why this case could be viewed as such an 'ordinary' case." *Id.* The Tenth Circuit took particular note that the physician relied completely on the victim's allegations in concluding abuse had occurred and stated that such testimony was "problematic." *Id.* at 1210. The court emphasized that if a conclusion that abuse had occurred was based on the victim's allegations, the physician would be impermissibly vouching for the victim's credibility. *Id.* at 1210, 1211 n. 6.

{7} In this case, before the physician testified, the trial court heard arguments on Defendant's motion. Defense counsel explained that the "concern with respect to any of this testimony is that [the physician's] statement, that the examination of [Victim] and the seeing [of] no kind of indication of sexual penetration, that that is consistent with abuse. I believe under *Daubert* that there would be no medical basis for giving that opinion." Relying on *Velarde,* counsel argued that relying on a victim's testimony to form a conclusion is simply vouching for the victim's credibility. In ruling on Defendant's motion in this case, the court first asked defense counsel to agree that the physician was permitted to testify about the history Victim gave. Defense counsel agreed that this was permissible. The following interchange then took place:

> Court: Okay. Let me ask, I have ruled on this several times, I see no problem with the doctor saying that the history is consistent with the findings. Do you—are you asking for anything more that the doctor testified to? For instance, I'm not going to let the doctor say, "I believe the patient" or anything like that, but I think she can say that her findings are consistent with the history that she obtained.

> Defense counsel: Certainly, Your Honor, and we understand that for her to present to the jury that she believes such and such occurred because of what the alleged victim told to her would be impermissible vouching and that's what we're asking the Court to not allow.

Defense counsel asked for clarification that the court was ruling that the physician could testify that "a normal exam is consistent with the allegations that were made[.]" The court responded: "With the history that the patient gave, for instance, it's pretty obvious. If it was fellatio, they wouldn't find anything." Defense counsel then asked if the court was "going to allow the doctor to testify as to a diagnosis of child sex abuse[,]" to which the court responded, "No. I'm saying with an—I'm not going to go any farther than that, but I think any doctor can testify whether the finding is consistent with the history.".

{8} The record reveals, therefore, that Defendant objected to the admission of a diagnosis of sexual abuse based on a normal examination and Victim's reported history and agreed with the trial court that the physician could testify that the examination was consistent with the findings. The court made clear that the physician's testimony was to be limited to a statement that the examination was consistent with the history reported by Victim. In our view, the trial court's ruling was within its "discretionary authority needed . . . to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co.*, 526 U.S. at 152, 119 S.Ct. 1167. As the State points out in its answer brief, when the physician testified, she never concluded that abuse had occurred, but only that the normal examination was consistent with the history given by Victim. The physician testified that Victim had reported only oral contact with Defendant. The physician then testified that because of Victim's report, an examination showing that "all the structures and her genitalia and her anus were all normal" was consistent with Victim's report. In addition, the physician testified that her examination of Victim's mouth was also normal and revealed no bruising, which was also consistent with Victim's account because she had not described any pain in her mouth. Contrary to Defendant's contention, relying on one interchange between the prosecutor and the physician, that the import of the physician's testimony was that the normal examination was consistent with all of Victim's reporting of sexual abuse, we do not read the physician's testimony in that way. In fact, immediately after the interchange between the prosecutor and the physician on which Defendant relies, the physician was asked to explain what she meant, and she limited her testimony in the way we have just described, particularly as to the fellatio.

{9} That these findings were consistent with Victim's report is, as the trial court observed, "pretty obvious" and does not constitute the type of expert opinion based on scientific, technical, or other expert knowledge that triggers a reliability hearing under *Daubert–Alberico*. Moreover, insofar as De-

fendant is now arguing that the physician should not have been permitted to testify that the normal examination was consistent with Victim's report, this issue was not properly preserved for review. Similarly, Defendant did not argue below that this evidence was unfairly prejudicial.

{10} Defendant also argues in his brief in chief that the physician should not have been permitted to testify about the history she obtained from Victim. As Defendant acknowledges, before the court allowed this testimony, it ascertained that the history had been obtained for the purposes of diagnosis and treatment. Such testimony, as the State argues, is admissible under Rule 11–803(D) NMRA. Defendant does not challenge that such testimony is admissible in theory, but asserts that the physician did not use this information for that purpose. We are not persuaded by Defendant's contention that the patient's reported history and the physician's examinations were irrelevant to her diagnosis, and Defendant does not cite us to any case to support his assertion that the testimony should not have been admitted on this basis. Moreover, as the State argues, this precise objection was not made below.

{11} In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. On appeal, the reviewing court will not consider issues that were not raised in the trial court unless the issues involve matters of fundamental rights or fundamental error. *In re Aaron L.*, 2000–NMCA–024, ¶ 10, 128 N.M. 641, 996 P.2d 431. Defendant appears to acknowledge this by stating that "[w]hen a defendant fails to preserve an error, this Court may review only for fundamental error," but he argues only very briefly that he was denied a fair trial because the physician extended her testimony to impermissible matters.

{12} As our Supreme Court stated in *State v. Barber*, 2004–NMSC–019, ¶ 17, 135 N.M. 621, 92 P.3d 633, the fundamental error doctrine is applied to review unpreserved error

when the court's conscience is shocked at a miscarriage of justice, such as when a defendant is "indisputably innocent" or when "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." Our review of the record persuades us that no miscarriage of justice occurred. Because we find no error, we find no cumulative error. *See State v. Aragon*, 1999–NMCA–060, ¶ 19, 127 N.M. 393, 981 P.2d 1211.

### Lesser Included Offense Instruction

{13} Defendant argues that the trial court committed reversible error by not instructing the jury on the lesser included offense of CSCM as to four CSPM charges of digital penetration. Defendant requested that the jury be instructed, in the alternative, that "[t]he defendant unlawfully and intentionally touched or applied force to the genital area of [Victim]." The court denied the request, and the jury was instructed that the State was required to prove beyond a reasonable doubt that "Defendant caused the insertion, to any extent, of a finger into the vagina of [Victim]." *See* UJI 14–957 NMRA; NMSA 1978, § 30–9–11(A), (C)(1) (2003).

{14} "In order to obtain an instruction on a lesser included offense, '[t]here must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable.'" *State v. Brown*, 1998–NMSC–037, ¶ 12, 126 N.M. 338, 969 P.2d 313 (quoting *State v. Curley*, 1997–NMCA–038, ¶ 5, 123 N.M. 295, 939 P.2d 1103). We review this issue de novo. *State v. Munoz*, 2004–NMCA–103, ¶ 10, 136 N.M. 235, 96 P.3d 796.

{15} Defendant argued below that the court should instruct the jury on the lesser included offense of CSCM for the four counts of CSPM based on digital penetration. Defendant reasoned that an issue was raised for the jury about the extent of the digital penetration and whether it constituted penetration or simply contact. Both Defendant and the State agree that the three-prong cognate approach entitles a defendant to a lesser included offense instruction when

(1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*State v. Meadors*, 121 N.M. 38, 44, 908 P.2d 731, 737 (1995). While Defendant's argument focuses on the first two prongs of this test, pointing out that the trial court acknowledged that penetration could not be achieved without contact, the State contends that because Victim testified that Defendant both touched and penetrated her, there was no confusion that digital penetration had occurred on occasions to support the CSPM charges.

{16} We agree with the State. Although Victim testified that Defendant had begun to touch her when she was in second or third grade, she also testified that beginning when she was in third or fourth grade, Defendant would penetrate her. Victim testified that this penetration occurred more than fifty times. There is no ambiguity in this testimony that would lead a rational juror to acquit of CSPM and convict of CSCM based on this evidence, and the trial court did not err in denying Defendant's request for lesser included offense instructions on the charges based on this evidence.

### Impeachment

{17} Victim's mother testified at trial that she saw Defendant making her eleven-year-old daughter engage in fellatio. During cross-examination of Victim's mother, defense counsel sought to ask the witness about losing her job for stealing to impeach her credibility. The trial court ruled that the defense could not do so. Defendant argues that the trial court erred in not permitting defense counsel to impeach Victim's mother's testimony with prior acts of dishonesty. Specifically, Defendant argues that under

Rule 11–608(B)(1) NMRA, he should have been allowed to inquire about whether the witness lost her job for stealing. The admission or exclusion of evidence is within the discretion of the trial court. On appeal, the trial court's decision is reviewed for abuse of discretion. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

{18} Rule 11–608(B)(1) provides that specific instances of conduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness." In ruling that defense counsel could not inquire about accusations of theft, the court expressed concern about the remoteness of the incident, which allegedly occurred in 1998. Because the remoteness in time of the alleged conduct is one of the factors the trial court should consider in deciding whether or not to permit inquiry into the conduct, we do not consider the trial court's ruling unreasonable *See State v. Marquez*, 87 N.M. 57, 62, 529 P.2d 283, 288 (Ct.App.1974) (stating that safeguards to the admission of such conduct are that "the instances inquired into be probative of truthfulness or its opposite and not remote in time") (internal quotation marks, citation, and emphasis omitted). In addition, as the State argues, actual misconduct is more probative than "a mere accusation." *See State v. Robinson*, 99 N.M. 674, 676, 662 P.2d 1341, 1343 (1983) (stating that safeguards against impeachment by accusations rather than convictions apply to Rule 11–608(B)). In this case the accusations were not supported by investigations, arrests, or charges.

## CONCLUSION

{19} For the foregoing reasons, we affirm Defendant's convictions.

{20} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.