This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                                    **NO. 31,425**

**ARTHUR TREY MCCLINTOCK III,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

The Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Arthur Trey McClintock III appeals from his conviction of child abuse resulting in death or great bodily harm. The victim is Defendant's infant daughter (baby). He contends the district court erred in not allowing testimony of prior instances of abuse by baby's maternal grandmother on her daughter, baby's mother, when she was younger. We perceive no error. Defendant also contends that reversal is required because one or more of the jurors were asleep during the testimony of the State's expert. We do not consider this claim because it was not raised or preserved in the district court, and there is no support for this contention in the record on appeal. We thus affirm.

## BACKGROUND

**{2}** Because both parties are familiar with the events in dispute, we review just the basic facts here before proceeding to our discussion. Defendant was charged with, among other things, one count of child abuse resulting in great bodily harm related to an incident that occurred on March 6, 2010. On that day, baby's mother, Sharon Lactaoen, went to work in the morning and dropped baby off at her mother's house so that Defendant could sleep. Baby was about three months old at the time. Sharon's

mother, Robin Lopez, picked baby up at one point, and baby screamed as though she was hurt. Robin was concerned because she had never seen baby scream like that before, but then baby fell asleep. At about 3:30 p.m. baby was returned to Sharon. Sharon then left baby with Defendant while she went to clean a house.

{3} Defendant was alone with baby for about forty-five minutes when baby started crying and became rigid and feverish. Defendant tried to call Sharon, Robin, and his sister, but the calls were not going through. He also tried to call 911, but his phone was not working, so he ran outside to get a neighbor to call for help. Baby was rushed to Carlsbad Medical Center (CMC), where emergency personnel evaluated her and found that she had rapid decelerations of her heart beat. CMC personnel decided to transfer baby to University Medical Center of Lubbock, Texas (UMC) for continued treatment in their Pediatric Intensive Care Unit (PICU). Diagnostic testing revealed that baby suffered from one fresh subdural hematoma and one or possibly two older hematomas, as well as extensive retinal hemorrhaging.

{4} Personnel at UMC or CMC contacted the Carlsbad Police Department to report their suspicions of abuse, and thereafter, Detective Kohler began an investigation that included speaking to members of baby's family. Detective Kohler spoke with Defendant who indicated that he did not know what could have caused baby's injuries and said that he had only changed and fed her. After Detective Kohler told Defendant

3

that baby's injuries could only have been caused by being severely shaken or slammed against something, Defendant admitted that baby had slipped out of his hands when he was holding her and that he had dropped child into her crib and must have done it too hard.

{5}     Defendant then explained that the underside of his arms would get caught on the side of the crib when he lowered baby into it, which frustrated him, so he sometimes just dropped her in there. Defendant told Detective Kohler that he was playing rocket ship with baby where he would pick her up and bring her down really fast. Baby ultimately got fussy, so Defendant changed her, fed her, and tried to put her in the crib. When baby fell out of her blanket, Defendant picked her up and tossed her into the crib. She started seizing ten minutes later. Defendant described his tossing baby into the crib as an "unintentional slamming" and admitted that his actions must have caused her injuries, although he never intended to hurt her.

{6}     A criminal complaint charged Defendant with one count of child abuse resulting in great bodily harm for the March 6, 2010 incident and two counts of child abuse not resulting in great bodily harm for two prior hospitalizations involving baby. On May 27, 2010, Defendant was bound over to the district court and similarly charged by criminal information. At trial, the district court directed a verdict of not guilty on one of the child abuse charges. The jury then returned a guilty verdict as to

4

count one, negligent child abuse resulting in great bodily harm, and acquitted him of count two, negligent child abuse not resulting in great bodily harm. Defendant was sentenced to the mandatory eighteen-year statutory penalty. This appeal followed.

**DISCUSSION**

{7}     Defendant raises two issues on appeal. First, Defendant argues that the district court abused its discretion by excluding or limiting testimony regarding allegations against baby's maternal grandmother, Robin Lopez. In addition, Defendant contends that reversal is required because one or more jurors slept through the testimony of the State's expert. We begin with the evidentiary issue and then turn to Defendant's argument regarding the sleeping juror or jurors.

**The Evidentiary Issue**

{8}     Defendant first contends that the exclusion of testimony that Robin had a history of abusing children was error. Specifically, he argues that the prior instances of abuse by Robin were relevant and permissible under Rule 11-404(B) NMRA. "Relevant evidence" means evidence having "any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Further, in New Mexico, a defendant may introduce evidence of another person's crimes, wrongs, or acts to prove identity under a "reverse [11-]404(B)" theory. *State v. Saavedra*, 1985-NMSC-077, ¶ 5, 103

5

N.M. 282, 705 P.2d 1133, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. We review the district court's decision to admit or exclude evidence for abuse of discretion. *State v. Martinez*, 2008-NMSC-060, ¶ 8, 145 N.M. 220, 195 P.3d 1232. A district court abuses its discretion when it exercises discretion based on a misunderstanding of the law. *State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**{9}** On appeal, Defendant argues that he should have been able to question Sharon's mother and step-father, Robin and Robert Lopez about Robin's alleged history of child abuse. We start our analysis by setting forth the testimony that Defendant attempted to elicit at trial regarding prior instances of abuse by Robin and the subsequent rulings by the district court. We then explain why the evidence was properly excluded.

**{10}** During cross-examination of Robert, defense counsel asked him if he had ever seen Robin hit or mistreat any of her children. The State objected and argued that such allegations were not relevant because they related to older children and not babies, that such evidence was more prejudicial than probative, and that there was no foundation to admit this prior bad act under Rule 11-404(B). Although nearly inaudible, defense counsel responded that the information was reliable because Robin

6

had an extensive history with the State, that it was relevant because a jury could infer that a person who was willing to hit children was willing to abuse baby, and that this evidence was not really harmful to Robin since she was not the one facing criminal charges. He did not proffer any particular evidence concerning the alleged abuse or "extensive history" with the State, nor did he offer to lay a proper foundation with Robert. The district court sustained the objection in part. It agreed with the State that getting angry with a baby and getting angry with a teenager are two "radically different" behaviors and, for that reason, limited Robert's testimony to times when Robin became frustrated while caring for babies. Defense counsel said that he could limit his questions to incidents involving infants.

{11} Defense counsel then asked Robert if Robin ever got rough with her babies. Robert testified that he never saw Robin yell or act rough with children when they were babies, and he thought Robin was a good and loving mother. He further testified that babies cared for by Robin never had to go to the emergency room because they were injured.

{12} Later, when questioning Robin, defense counsel asked if she had difficulties with her children when they were babies, and she responded, "just with Sharon." Defense counsel then asked Robin about an incident with Sharon and a baby crib, but the State objected, and the court held a bench conference. The parties agree that the

7

bench conference is inaudible. Afterward, defense counsel did not pursue the line of questioning regarding the baby crib with Robin any further. Nor did he attempt to question Robin about any other alleged instances of child abuse.

{13} As a preliminary matter, we note that, with regard to Robert's testimony, defense counsel agreed to limit his questions to Robert to those times when Robin became frustrated while caring for babies, and Robert subsequently answered all the questions posed to him without limitation or further objection from the State. To the extent that Defendant sought to introduce evidence of other prior instances of child abuse by Robin through Robert's testimony, we cannot determine on appeal either the content of the evidence or whether Robert even knew about these alleged instances of abuse. Despite stating several grounds for the admission of the testimony, Defendant failed to adequately describe it or lay a proper foundation for its admission. *See State v. Ellison*, 1914-NMSC-076, ¶ 33, 19 N.M. 428, 144 P. 10 (excluding evidence of a reputation for bad moral character to attack a witness's credibility where no proper foundation had been laid by the defendant). And because the appellate record is unclear on the point, we cannot hold that the district court abused its discretion.

{14} Defendant also has not properly preserved his claim of error for review with respect to the State's objection to Robin's testimony either generally as to prior

instances of child abuse, or specifically about what she told Sharon about the baby crib. As we have noted, the parties agree that after the State objected to the question concerning the crib, the taped transcript of the ensuing discussion at the bench is inaudible. Rule 12-211(H) NMRA states that the appellant shall provide a statement of the evidence or proceedings where a taped transcript is inaudible, including from the appellant's recollection. No such statement was filed in this case and, therefore, there is no adequate or discernible record for us to review.

{15} In addition to trial counsel's failure to provide a statement of the proceedings from the inaudible tape, there is nothing in the record concerning the details of Robin's alleged history of child abuse for us to consider. There are no documents establishing that Robin had a history of child abuse. There is no indication whether she was charged or convicted of child abuse, either criminally or civilly, or whether her children were removed from her care. There are no details of the type of abuse that allegedly took place, the ages of the child or children when they were allegedly abused, or the time frame involved. With no record except for Defendant's vague allegation of "prior instances of abuse, including at least one involving a baby," we cannot conclude that the district court's ruling was an abuse of discretion. As a final matter, assuming without deciding that Robin would testify that she abused Sharon as a baby and that the testimony was relevant, the district court nevertheless did not

9

err in excluding evidence of the incident that had taken place about twenty years earlier. Such testimony, if true, was too remote and speculative to aid the jury. *See* Rule 11-403 NMRA (stating that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury"). Accordingly, we deny Defendant relief on this claim on direct appeal. And, for the reasons set forth above, we need not address the issue of whether the exclusion of the evidence was harmless error.

**Juror Misconduct**

{16}    Next, we address Defendant's contention that reversal is required because a juror or jurors were sleeping during testimony. Criminal defendants have a constitutional right to a fair trial and an impartial jury, *see Irvin v. Dowd*, 366 U.S. 717, 721 (1961), that is competent and unimpaired, *see Tanner v. United States*, 483 U.S. 107, 126-27 (1987). A defendant could be deprived of a Fifth Amendment right to due process or the Sixth Amendment right to an impartial jury if jurors fall asleep and are unable to fairly consider the defendant's case. *See State v. Sena*, 1987-NMSC-038, ¶¶ 8-9, 105 N.M. 686, 736 P.2d 491 (noting that juror misconduct includes activity by jurors that is inconsistent with the instructions by the court and rejecting the defendant's argument that the defendant's sister saw a juror sleeping during the trial as vague and uncorroborated).

{17} In this case, Defendant concedes that there was no mention during or immediately after the trial of a juror or jurors sleeping and that no evidence of sleeping jurors was submitted to or reviewed by the district court. In fact, the only mention of jurors sleeping is in Defendant's post-conviction motion for an appeal bond and in his docketing statement. The motion for appeal bond is limited to defense counsel's statement of "reports of jurors sleeping during critical testimony," and it offers no other information or evidence. The docketing statement contends that, while the medical expert was testifying, "an audience member noted jurors/alternate jurors sleeping" and that "[t]rial counsel was not notified of this until approximately two days after trial was completed." Again, there is no record to support this assertion. For example, the motion and docketing statement fail to identify the person who had purportedly observed the juror or jurors sleeping. Nor did the motion or docketing statement specify what observations had caused the unidentified person to conclude that the juror or jurors were actually asleep. Moreover, the motion and docketing statement did not specify the time period this had allegedly occurred, and neither document included an explanation as to why the unidentified person did not contemporaneously inform the district court of the problem. Defendant failed to assert this claim in the district court and, with no record, is precluded from doing so in this appeal.

11

**{18}** To the extent Defendant relies on fundamental error for his argument, we are not persuaded. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). Such is not the case here where Defendant concedes that no evidence was submitted to or reviewed by the district court. Moreover, even if we consider Defendant's sleeping juror claim as presented on appeal, the claim is no more than a generalized allegation. Without a record establishing that any juror slept during Defendant's trial, we conclude that his assertion of juror misconduct as grounds for a new trial is without merit. We note, however, that Defendant can pursue his claim of juror misconduct through a petition for habeas corpus relief, pursuant to Rule 5-802 NMRA.

**CONCLUSION**

**{19}** For the reasons set forth above, Defendant's conviction is affirmed.

**{20}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**