This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                            NO. 28,623

**ADRIAN N.,**

Child-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

During custodial interrogation, Adrian N. (Child) confessed to detectives from the Las Cruces Police Department that he stabbed one of his fellow students. Child, who was fifteen years old at that time, was charged by petition with the delinquent act of aggravated battery with a deadly weapon. Child moved to suppress his statements to the officers and the video recording of that confession on the grounds that, prior to the interrogation, the officers had not obtained a knowing, intelligent, and voluntary waiver of Child's Fifth Amendment rights against self-incrimination. The Children's Court Division of the Third Judicial District Court granted Child's motion. The district court concluded that Child did not, pursuant to NMSA 1978, Section 32A-2-14(E) (2009), knowingly, intelligently, and voluntarily waive those rights. This interlocutory appeal, filed by the State, followed. We reverse.

**BACKGROUND**

On October 31, 2007, Child confessed to detectives from the Las Cruces Police Department that, earlier that day, he stabbed one of his fellow students in the stomach with an exacto knife. Child was charged by petition with the delinquent act of aggravated battery with a deadly weapon. Specifically, Child was charged with violating NMSA 1978, Section 30-3-5(A) and (C) (1969), and NMSA 1978, Section 32A-2-3 (2009). At the time of this incident, Child was roughly fifteen years and four

2

months old and was a sophomore at Mayfield High School in Las Cruces, New Mexico. Child does not disagree with the State's description, based on Detective Rosa's testimony, that Child seemed like a normal teenager and displayed no mental or physical impairment.

Detective Edgar Rosa conducted the interrogation of Child during which Child provided his confession. The interrogation took place in a standard interrogation room, a nondescript, nine-by-six-foot room furnished with three chairs and a small table. Detective Irma Palos, also of the Las Cruces Police Department, was present during the interrogation. Child was seated across the table from Detective Rosa. Detective Palos sat to Child's right. Child was not restrained and was wearing the clothes he had on at the time of his arrest. The interrogation of Child was recorded by a video camera. We have reviewed that recording and a description of the interrogation follows.

At the outset of the interrogation, Detective Rosa identified himself and Detective Palos, and then he stated, "Obviously, we are with the police. You know why we are out and about." He then told Child that he wanted to "go over a few things" before they "started talking" to ensure that Child understood his rights. Immediately thereafter, Detective Rosa asked Child how old he was. Child responded

3

that he was fifteen. After asking a number of other biographical questions about Child, i.e., his full name, address, whether he had any siblings, who he lived with, etc., Detective Rosa stated, "Before we begin, I need to read you your rights, okay. These are the things you need to know before we start talking about what happened out there." Detective Rosa then proceeded to read to Child from a standardized "*Miranda* Warning" card.

The "*Miranda* Warning" card Detective Rosa read from contains the following advisements:

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

After reading each of these rights, Detective Rosa paused and asked Child whether he understood the right he had just read. Child responded in an identical fashion each time; he promptly and in a calm fashion stated, "Yes."

After reading Child the rights on the "*Miranda* Warning" card and obtaining a verbal confirmation that Child understood those rights, Detective Rosa then passed

4

the card across the table and instructed Child to mark the appropriate box, "YES" or "NO," with respect to whether he understood those rights and to sign and date the card. Child selected the "YES" box, signed and dated the card, and returned it to Detective Rosa. Thereafter, Detective Rosa addressed Child and said, "Okay, I read over each of your rights, and we're here today to talk about what happened at the school. Do you want to tell me what happened?" The following is a description of Child's reply.

Child described the incident in question in a calm and collected manner. According to Child, he and the victim were friends and had been seated together in art class since the beginning of the school year. For reasons unknown, the victim began slapping Child in the face. Child told the victim that if he persisted in slapping him, he would stab him with the exacto knife he had been issued for his art project. The victim responded that he did not believe Child would stab him and slapped Child once more. Child then stabbed the victim with the exacto knife in the stomach.

Detective Rosa informed Child that several of Child's classmates informed him that Child and the victim regularly "horsed around" and engaged in play fighting. Child confirmed this was true. Detective Rosa then asked Child why he had stabbed the victim on this particular occasion. Child responded that he simply was in no mood

5

to participate in horseplay at that time. Detective Rosa asked Child what happened after he stabbed the victim. Child responded that the victim got up, was walking around, and the victim observed that there was blood emanating from his stab wound. Child indicated that he also left his seat. He walked to the teacher and gave her the exacto knife.

Towards the end of the interrogation, Detective Rosa motioned to Detective Palos to inquire whether she had any questions for Child. Detective Palos asked Child how he felt after he stabbed the victim. Child responded that he was shocked that he had done what he did. Detective Palos then asked Child how he was feeling at that moment. Child responded "bad" and appeared to wipe a tear from his cheek. Finally, Detective Rosa asked Child whether he had ever done anything else like this. Child responded that in sixth grade, he got mad and threw a pair of scissors, but did not hit anyone with them. Child was suspended for the rest of the day as a consequence of the scissor-throwing incident. With that, the interrogation of Child concluded.

The video recording of Child's interrogation was admitted into evidence on April 17, 2008. On that same date, Child submitted two motions in limine. In the first of these two motions, Child sought to suppress any evidence pertaining to the scissor-throwing incident and the school suspension. According to Child, such evidence, if

introduced, would unfairly prejudice Child and would constitute impermissible character evidence. In his second motion, Child sought suppression of his statements regarding the stabbing and the video recording of Child's interrogation. According to Child, he had not provided a knowing, intelligent, and voluntary waiver of his Fifth Amendment rights against self-incrimination before the detectives commenced the interrogation.

With respect to Child's motion regarding the scissor-throwing incident, the State stipulated that it had no intention of introducing any evidence pertaining to that incident or Child's subsequent school suspension. Accordingly, the district court granted Child's motion in limine relating to that evidence. However, the State contested Child's second motion and Child's assertion that Detective Rosa had failed to obtain a knowing, intelligent, and voluntary waiver from Child before interrogating him.

After reviewing the video recording of Child's interrogation, receiving testimony from Detective Rosa, and hearing argument from both parties, the district court granted Child's motion to suppress Child's statements to Detectives Rosa and Palos and the video recording of Child's interrogation. The district court issued a written order (drafted by counsel for Child) in which it specified the basis for its

decision. In that order, the district court examined the various enumerated factors in Section 32A-2-14(E), which provides statutory guidance in assessing whether a Child over the age of fifteen validly waived his Fifth Amendment rights against self-incrimination. After considering the evidence before the court and the enumerated factors, the district court concluded that, on balance, Child's waiver had not been knowing, intelligent, and voluntary. The State filed a timely notice of appeal invoking this Court's jurisdiction to hear interlocutory appeals.

**DISCUSSION**

**STANDARD OF REVIEW**

"The standard of review for suppression rulings is whether the law was correctly applied to the facts[.]" *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). This inquiry involves mixed questions of fact and law. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. When presented with mixed questions of fact and law, "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *Id.* "The ultimate determination of whether a valid waiver of Fifth Amendment rights has occurred, however, is a question of law which we review de novo." *State v. Martinez*,

8

1999-NMSC-018, ¶ 15, 127 N.M. 207, 979 P.2d 718 (internal quotation marks and citation omitted). "[E]very reasonable presumption against waiver is indulged." *Id.* ¶ 14 (internal quotation marks and citation omitted).

**THE LAW**

The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, secures a criminal defendant's rights against self-incrimination, *Martinez*, 1999-NMSC-018, ¶ 13, and requires that "prior to [police] questioning, a person 'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *State v. Javier M.*, 2001-NMSC-030, ¶ 15, 131 N.M. 1, 33 P.3d 1 (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). This Fifth Amendment privilege against self-incrimination is similarly applicable to juveniles. *Id.* ¶ 16. Nevertheless, "[t]he Constitution only prohibits government practices and procedures that compel individuals to incriminate themselves." *Id.* ¶ 13. As recognized by the United States Supreme Court, "there are certain situations where the circumstances surrounding the asking of a question by law enforcement are so inherently coercive that any answer is 'compelled' under the Fifth Amendment." *Id.* ¶ 14. "[S]uch compelling pressures [exist] when a person is subject

9

to custodial police interrogation." *Id.* As the parties do not dispute that the interrogation of Child was custodial in nature, the State (before interrogating Child) was first required to demonstrate, by a preponderance of the evidence, that it obtained from Child "a knowing, intelligent, and voluntary waiver" of Child's Fifth Amendment rights against self-incrimination. *Martinez*, 1999-NMSC-018, ¶¶ 13-14.

When reviewing whether the State has carried its burden in establishing such a knowing, intelligent, and voluntary waiver, we examine "the totality of the circumstances and the particular facts, including consideration of the mental and physical condition, background, experience, and conduct of the accused as well as the conduct of the police." *Id.* ¶ 14 (internal quotation marks and citation omitted). "The test for reviewing a juvenile's waiver of rights is identical to that of an adult's and is [also] based on the totality of the circumstances." *State v. Lasner*, 2000-NMSC-038, ¶ 6, 129 N.M. 806, 14 P.3d 1282. However, the New Mexico Legislature, through Section 32A-2-14 of the New Mexico Children's Code, has expressed its judgment concerning the capacity of children to waive their Fifth Amendment rights against self-incrimination and has provided guidance for courts reviewing that matter. *See Martinez*, 1999-NMSC-018, ¶ 18 (discussing the import of Section 32A-2-14 in the context of evaluating the waiver of rights against self-incrimination by juveniles).

Section 32A-2-14(F) provides that "no confessions, statements or admissions may be introduced against a child under the age of thirteen years." With respect to children between the ages of thirteen and fourteen, Section 32A-2-14(F) states, "There is a rebuttable presumption that any confessions, statements or admissions made by a child thirteen or fourteen years old to a person in a position of authority are inadmissible." Finally, with respect to children fifteen and older (the category Child falls within), Section 32A-2-14(E) provides:

> In determining whether the child knowingly, intelligently and voluntarily waived the child's rights, the court shall consider the following factors:
> (1) the age and education of the respondent;
> (2) whether the respondent is in custody;
> (3) the manner in which the respondent was advised of the [respondent's] rights;
> (4) the length of questioning and circumstances under which the respondent was questioned;
> (5) the condition of the quarters where the respondent was being kept at the time [of being] questioned;
> (6) the time of day and the treatment of the respondent at the time [of being] questioned;
> (7) the mental and physical condition of the respondent at the time [of being] questioned; and
> (8) whether the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

Despite the fact that courts are statutorily required to consider these factors in determining whether, under the totality of the circumstances, a child age fifteen or older waived his rights against self-incrimination, the New Mexico Supreme Court has

previously explained that this statutory mandate does not establish "a heightened protection for statements by juveniles." *Martinez*, 1999-NMSC-018, ¶ 18. "[E]ssentially," the New Mexico Supreme Court explained, the statute's mandate that specific factors are to be considered is nothing more than "a codification of the totality-of-circumstances test applied in evaluating a waiver of constitutional rights by an adult, though emphasizing some of the circumstances that may be particularly relevant for a juvenile." *Id.* (internal quotation marks and citation omitted).

Having outlined the applicable legal framework governing the matter at hand, we now assess whether the district court's conclusion that Child's waiver was not knowing, intelligent, and voluntary comports with this framework and our case law on this subject.

**THE FACTS**

The district court's order contains a series of factual findings followed by four conclusions. All of the factual findings relate to the specific factors enumerated in Section 32A-2-14(E). Substantial evidence, i.e., "evidence . . . acceptable to a reasonable mind as adequate support for the finding," *Armijo v. World Ins. Co.*, 78 N.M. 204, 206, 429 P.2d 904, 906 (1967), plainly supports the following of the district court's findings: at the time of his interrogation, which occurred during the mid-

morning hours of the day, Child was fifteen years old and in the tenth grade; after the stabbing, Child was escorted by police officers from school to the police station; Child was in custody at the time of the interrogation; Child was escorted into the interrogation room, a small, windowless, and nondescript room, by two uniformed and armed officers; Detective Rosa, who is a fully grown man and larger than Child, conducted the interrogation and was seated across the table from Child; the duration of the interrogation was fairly short; during the interrogation, neither a parent, friend, relative, nor attorney accompanied Child; after Detective Rosa read Child his rights, Child immediately began describing the incident which lead to his arrest; at one point in the interrogation, Child was overcome with emotions and it appeared as though he might cry.

Our review of the record also reveals that the district court's order includes several findings that are not supported by substantial evidence. The district court found that Child was advised of his rights by Detective Rosa in a manner no different than the procedure for adults. In fact, the record reflects that just the opposite is true. Detective Rosa explained that, given Child's age, he believed that it was necessary to take extra steps to ensure that Child understood his Fifth Amendment rights. Thus, Detective Rosa asked Child if he understood each right on the "*Miranda* Warning"

13

card as he read each individual right to Child. Detective Rosa testified that he would not have taken this extra step if Child was an adult. Accordingly, the district court's finding that Detective Rosa advised Child of his rights in a manner no different than the procedure followed for an adult is not supported by substantial evidence. *See Malcolm v. Malcolm*, 75 N.M. 566, 568, 408 P.2d 143, 144 (1965) (holding that the district court's finding was not supported by substantial evidence where no evidence was submitted in support of that finding and the record supported the opposite conclusion). The district court also found that, after having been read his rights, Child did not acknowledge, verbally indicate, or otherwise confirm that he understood them. Again, the record reveals that just the opposite is true. As noted, after Detective Rosa read Child each of the rights on the "*Miranda* Warning" card, he specifically asked Child whether he understood what had just been read to him. In each circumstance, Child verbally indicated that he had. Furthermore, Detective Rosa gave Child the card he had been reading from (after he had read Child all the rights on that card) and asked Child to indicate whether he understood the rights that had been read to him by placing a mark in either the yes or no box on that card. Child selected the yes box and signed the card. Thus, the district court's finding that Child made no indication that he understood his rights is similarly not supported by substantial evidence. *See id.*

14

Finally, the district court found that, when Child was escorted from his school to the police station, Child was arrested by "armed police officers, who shackled him, secured him in a marked police unit, and took him to the police station." We fail to see where the district court derived these findings. Detective Rosa was the sole witness who testified at the suppression hearing, and he merely stated that Child was arrested and brought to the police station. Thus, there was no evidence submitted to support the conclusion that Child was "shackled" at the time of his arrest or that he was brought to the police station in a "marked unit" by "armed police officers." These findings are entirely speculative and not supported by substantial evidence. *See Baca v. Bueno Foods*, 108 N.M. 98, 102, 766 P.2d 1332, 1336 (Ct. App. 1988) (substantial evidence of a proposition requires reasonable inference and not speculation). Having completed our review of the district court's findings, and having established that only a certain portion of those findings are supported by substantial evidence, we now examine the district court's legal conclusions.

**THE DISTRICT COURT'S CONCLUSIONS OF LAW**

On the first page of the district court's order (under the subheading within which the district court set forth its findings), the district court erroneously characterized several legal conclusions as "findings." *See Edens v. N.M. Health &*

15

*Social Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976) (observing that an appellate court is not bound by labels as to whether a determination below is a finding of fact or a conclusion of law). First, the district court "found" that "[h]eightened review of the totality of the circumstances is required" under Section 32A-2-14(E). Then, on the second page of the order, the district court "found" that because this heightened protection applies, the manner in which Child was advised of his rights constituted "no more than a reading of rights, not a knowing waiving [sic] of these rights." Neither of these legal conclusions are supported by our case law. *See Martinez*, 1999-NMSC-018, ¶ 18 (holding that Section 32A-2-14(E) does not establish a heightened protection for statements by juveniles but, rather, codifies the totality of the circumstances test); *see also Lasner*, 2000-NMSC-038, ¶¶ 3, 10, 11 (holding that a police officer's procedure for apprising a seventeen-and-a-half-year-old juvenile of his *Miranda* rights—the officer read the rights from a form and asked after each right was read whether the child understood—enabled that child to adequately understand those rights and knowingly waive them). There is yet a third legal conclusion in the findings section of the district court's order. On the second page of the order, the district court found that "[t]he close quarters and lack of windows reinforced [C]hild's isolation and the detective's power over him." That

16

Child was alone in a small and windowless interrogation room with the detectives are findings of fact and, in this matter, facts supported by substantial evidence. That, as a consequence of these facts, the detectives' asserted power over Child is not a fact. We understand the district court's conclusion that the detectives had "power" over Child to indicate that the detectives overcame Child's will. Whether Child's will was overcome is the ultimate legal issue in dispute in this matter, i.e., whether Child waived his rights against self-incrimination and agreed to speak with the detectives on his own volition or whether Child was compelled to do so by the detectives' conduct. We may disregard legal conclusions erroneously designated as facts and, thus, disregard this conclusion. *See Wilson v. Richardson Ford Sales, Inc.*, 97 N.M. 226, 228, 638 P.2d 1071, 1073 (1981) (observing that the district court's finding regarding scope of employee's duty fell within the grey area of law-fact distinction and, though presented as a finding of fact, it was actually a conclusion of law and thus to be disregarded as a fact).

Turning to those legal conclusions that the district court (in its order) specifically designated as such, it is clear that all four conclusions are merely permutations of one singular conclusion: the totality of the circumstances surrounding the interrogation of Child proves that Child was unable to understand his *Miranda*

rights and, thus, unable to waive them in a knowing, intelligent, and voluntary manner. We disagree. When the findings of fact which are supported by substantial evidence are examined under the enumerated factors in Section 32A-2-14(E), it is apparent that, under the totality of the circumstances, Child knowingly, intelligently, and voluntarily waived his *Miranda* rights.

Turning our attention to the first of the factors enumerated under Section 32A-2-14(E) (the age and education of Child), at the time of the interrogation Child, was fifteen years and four months old and in the tenth grade of high school. We have previously explained that, in contrast to children under the age of fifteen, "a child over age fifteen is unlikely to make an involuntary statement . . . after receiving *Miranda* warnings." *State v. Jonathan M.*, 109 N.M. 789, 791, 791 P.2d 64, 66 (1990). The district court's finding that Child's "tender age" decreased the likelihood that Child understood his rights and knowingly, intelligently, and voluntarily waived them is contrary to controlling precedent. *Id.*

With respect to the second factor (whether Child was in custody), the fact that Child was in police custody in and of itself is of uncertain significance. Rather, what seems of far greater significance—in light of the fact that Child was in custody—is the manner in which Child was advised of his rights (the third enumerated factor) and

18

the conditions Child was subjected to during the time he was in custody, including the length of questioning and circumstances under which that questioning was carried out (the fourth factor), the conditions of the quarters where Child was kept at the time of being questioned (the fifth factor), and the time of day and treatment of Child at the time he was questioned (the sixth factor).

With respect to the manner in which Child was advised of his rights (factor three), Child was read his rights from a standard *Miranda* warning card and after each of his individual rights was read aloud, the detective paused and inquired whether Child understood what was just read to him. Child responded in a uniform and calm manner after each individual right was read that he did understand the right that was just read. Then, the detective passed Child the card he had been reading from and asked Child to indicate on the card itself whether Child understood the rights on that card. Child selected the "yes" box indicating (again) that he understood his rights. Detective Rosa then asked Child whether he wished to discuss the stabbing. Child immediately began describing the incident and forthrightly admitted that he stabbed his friend.

Given our existing precedent, we see no problem with the manner in which Child was advised of his rights. *See Lasner*, 2000-NMSC-038, ¶¶ 10-11 (observing

19

that whether a child defendant between the ages of fifteen and seventeen in fact knowingly and voluntarily waives his rights is not a question of form and, therefore, reading such a child his rights from a standard form rather than a special juvenile form and inquiring whether child understood was sufficient); *see also State v. Niewiadowski*, 120 N.M. 361, 365-66, 901 P.2d 779, 783-84 (Ct. App. 1995) (observing that a sixteen-year-old child defendant was satisfactorily apprised of his rights where a detective advised the child of his rights using a juvenile advice of rights form, gave the child a copy of that form to review while the detective advised him from it, and the child signed the form he was provided as an indication that he understood his rights.). Furthermore, our Supreme Court has previously indicated, where a child over the age of fifteen was advised of his *Miranda* rights during custodial interrogation and responded promptly and in a forthright manner to police questioning, that (under such circumstances) prompt and forthright responses suggest volitional, rather than compelled, conduct. *Martinez*, 1999-NMSC-018, ¶¶ 22-23.

Turning to the conditions child was subjected to while in custody (factors four, five, and six), Child was arrested at school, brought to a police station, and interrogated for roughly ten minutes in a standard interrogation room by two detectives in the mid-morning hours of October 31, 2007. Our precedent clearly

20

indicates that we have condoned the custodial interrogation of similarly aged children in nearly equivalent circumstances. *See Niewiadowski*, 120 N.M. at 365-66, 901 P.2d at 783-84 (finding nothing objectionable about the half-hour custodial interrogation of a sixteen-year-old child in a police department conference room); *see also Martinez*, 1999-NMSC-018, ¶¶ 22-24 (finding nothing objectionable about the arrest of a seventeen- year-old child and subsequent one-hour custodial interrogation of that child by two detectives in a room and noting with approval that the interrogation occurred at a time of day when the officers could expect the child to be alert and cognizant of the significance of the interrogation).

We see little significance in the district court's observation that Child was smaller than the detectives or that Child became emotional towards the end of the interrogation. We are confident that, generally, fifteen-and-a-half-year-old children are comparatively smaller than adult law enforcement officers. Thus, absent evidence that Detectives Rosa and Palos used their larger physical size in some way to compel Child to speak, the district court's finding that Child was smaller than the detectives is of minimum relevance by itself. *Cf. Martinez*, 1999-NMSC-018, ¶ 24 (observing that whether the police used any type of threat or physical coercion would be pertinent in determining whether seventeen-year-old child's statements during custodial

21

interrogation were compelled). With respect to Child's emotional outpouring, that it did not occur while he was responding to the detectives' inquiries about how he stabbed the victim, why he chose to do so, and where he stabbed the victim is significant. Child exhibited remorse only when asked, at the end of the interrogation, how he felt about what he had done. That Child would exhibit remorse in responding to such a question seems natural and, furthermore, has no bearing on whether Child's confession was volitional or compelled.

Turning to the seventh factor (the mental and physical condition of Child during the questioning), it is undisputed that, at the time of the incident, Child was an average, healthy fifteen year old. As we previously noted, our case law clearly holds that children over the age of fifteen are unlikely to make involuntary statements once apprised of their *Miranda* rights. *See Jonathan M.*, 109 N.M. at 791, 791 P.2d at 66.

Finally, with regard to the eighth factor (whether Child had the counsel of an attorney, friends, or relatives at the time he was questioned), our precedent is clear: "the Legislature has not established a requirement that parents be notified about a custodial interrogation of their juvenile child. . . . Rather, the lack of parental notification is one factor to consider in the totality of the circumstances." *Martinez*, 1999-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). Accordingly,

22

that Child was not accompanied by an attorney, relatives, or friends during the interrogation and spoke with his father only after the interrogation ended is merely one consideration amongst all of the other factors which, as illustrated, all strongly suggest Child's waiver was knowing, intelligent, and voluntary.

**CONCLUSION**

To defeat Child's motion to suppress, the State was required to demonstrate, by a preponderance of the evidence, that Child did knowingly, intelligently, and voluntarily waive his Fifth Amendment rights against self-incrimination. We hold that the State met this burden. After reviewing the enumerated factors in Section 32A-2-14(E), it is clear that the sole factor weighing against the State is the fact that Child lacked the counsel of an attorney, relatives, or friends during questioning and did not speak to his father until after the interrogation concluded. The remaining factors, when considered in light of the findings of fact supported by substantial evidence, all indicate that Child understood his rights, chose to speak to the detectives, and chose to answer their questions in a forthright and honest fashion. Accordingly, we hold that under the totality of the circumstances, only one conclusion can be reached: Child waived his Fifth Amendment rights against self-incrimination and said waiver was knowing, intelligent, and voluntary.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**