489 P.2d 406

Roger D. DULL et al., Plaintiffs-Appellants,

v.

Isabelle TELLEZ, Administratrix of the Estate of George Cromie, Deceased, Defendant-Appellee.

No. 647.

Court of Appeals of New Mexico.

Sept. 17, 1971.

Dennis J. Falk and Allen C. Dewey, Jr., Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for plaintiffs-appellants.

Eric D. Lanphere, Iden & Johnson, Albuquerque, for defendant-appellee.

OPINION

HENDLEY, Judge.

Plaintiffs sued for damages arising out of a rear-end automobile collision. The trial court submitted the issue of unavoidable accident because of an unforeseeable sudden illness to the jury. The plaintiffs objected on the ground that there was no evidence of a sudden illness and that by submitting this as the basis for an unavoidable accident instruction the trial court submitted a false issue to the jury. The jury returned a verdict for defendant and plaintiffs appeal asserting there was a lack of evidence to support giving instructions relating to unforeseeable sudden illness which constituted an unavoidable accident. It is not claimed that unforeseeable sudden illness is not a defense. See Dull v. Employers Liability Assurance Corp., 233 So.2d 43 (La.App.1970); Corin v. Gately, 338 Mass. 110, 153 N.E.2d 752 (1958); Boyleston v. Baxley, 243 S.C. 281, 133 S.E.2d 796 (1963).

We reverse.

Was there a basis for giving an un-avoidable accident instruction based on an unforeseeable sudden illness?

■ A party is entitled to an instruction on his theory of the case upon which there is evidence. Boyd v. Cleveland, 81 N.M. 732, 472 P.2d 995 (Ct.App.1970). Provided there is such evidence an unavoidable accident instruction is appropriate. Flanary v. Transport Trucking Stop, 78 N.M. 797, 438 P.2d 637 (Ct.App.1968). The proper test for giving an unavoidable accident instruction is whether there is any evidence from which the jury could conclude that the accident occurred without the negligence of any party being the proximate cause. Boyd v. Cleveland, supra.

The record discloses the following. Shortly before 10:45 p. m. plaintiffs were stopped at a light on East Central in Albuquerque behind a Cadillac automobile. Plaintiffs' automobile was rear-ended by a car driven by George Cromie. Plaintiff, Roger, stated he felt there was more than one impact. Immediately after the collision Cromie backed his car off the road to a parking area. Roger's car was damaged in front and back, having been bumped into the Cadillac. Shortly after the accident the police investigated and found no skid marks left by the Cromie car. The police officer testified that Cromie was unstable on his feet and there was an odor of alcohol on his breath. The officer noted in his report that Cromie was a " * * * border-line drunk driver."

Cromie's wife was a passenger in the Cromie car and testified that on the afternoon before the accident Cromie and his son-in-law had cut some trees at their home, had their evening meal, watched television, and then went to the American Legion Hall about 9:15 p. m. where they consumed two beers while they watched television.

No testimony was offered which would tend to show in any way that Cromie had an indication of an illness prior to the accident. Over plaintiffs' objection, testimony was given relating to Cromie's condition after the accident. The day following the accident Mr. Cromie was brought home by a filling station attendant who discovered Mr. Cromie in a stalled vehicle in the middle of Central Avenue. The attendant testified that upon discovering Mr. Cromie that he could not talk or move—"It was like he was paralyzed." Mrs. Cromie testified that after he was brought home her husband could not lift his left leg or use his left arm and that she had to help him put on his clothes to go see the doctor. Mrs. Cromie also testified that less than a month after the accident her husband had a "nervous seizure", and could not control his walk.

After the "nervous seizure" Cromie was taken to the Veterans' Hospital and examined by Dr. Kaplan, a neurosurgeon. Dr. Kaplan took a history which included the accident some four weeks previously, the weakness in the left leg and arm after the accident, and the absence of any trouble before the impact with plaintiffs' car.

Dr. Kaplan performed numerous tests all of which were interpreted to mean that Cromie had a brain tumor on the right side. An operation was performed but a tumor could not be found. Dr. Kaplan stated it was highly improbable that the conclusions of the tests were in error and did not alter his diagnosis. Dr. Kaplan stated that Cromie "undoubtedly had the tumor" prior to the accident. Dr. Kaplan also stated that "[o]ften people who have tumors in the frontal lobes of the brain have impaired understanding of the meaning and significance of events" and so Mr. Cromie was "not quite aware of the severity of the disease he had." Dr. Kaplan also testified that it was a possibility that the impact of the accident caused the cancer [tumor] which was then unknown, to become active or known.

The record fails to disclose any evidence about an inability of Mr. Cromie to operate an automobile before or on the date of the accident. The testimony establishes

the first time Mr. Cromie was observed to experience difficulty was on the day following the accident.

It is plaintiffs' contention that since there was no direct testimony relating to a sudden illness by Mr. Cromie at the time of the accident that a determination that there was a sudden illness could be made only by basing an inference on an inference. Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892 (Ct.App.1970).

Defendant claims that the proper inquiry is whether any inference necessary to the proof, of the numerous elements of the unforeseeable illness defense, is such that it can be said the evidence is sufficient that a "reasonable mind might accept [it] as adequate support for a conclusion." Samora v. Bradford, 81 N.M. 205, 465 P.2d 88 (Ct.App.1970).

We must first determine whether a reasonable inference exists as to whether or not Cromie suffered from a sudden illness. As stated in Samora v. Bradford, supra, "A reasonable inference is a conclusion arrived at by a process of reasoning. * * *" This conclusion, however, must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in light of common knowledge or common experience.

In order to reach a conclusion of sudden illness we would have to infer facts which are not present in the record. The testimony, taken singularly or collectively, does not give rise to an inference of a sudden illness. Dr. Kaplan's testimony of a brain tumor does not, in itself, give rise to an inference of a sudden illness. This is particularly so because, according to Dr. Kaplan, it was not possible to state that any action of Mr. Cromie prior to the accident was caused by the tumor. Some additional evidence would be needed. Evidence that Mr. Cromie always braked his automobile with his left foot and the absence of evidence as to braking in this case does not give rise to an inference that the absence of braking was due to a sudden illness. Again,

additional evidence is needed. The additional evidence on which defendant relies is the evidence of defendant's physical problems—his illness—subsequent to the accident.

We need not, and do not, determine that the evidence of the post-accident illness permits an inference that the illness pre-existed the accident. See Ferran v. Jacquez, 68 N.M. 367, 362 P.2d 519 (1961). Assuming a pre-accident illness may be inferred, the issue here is whether an inference of a "sudden" illness, immediately prior to or at the time of the accident, may be inferred. This issue involves the timing of the illness—when it began. In our opinion, the fact that an illness existed on the day following the accident does not permit an inference Mr. Cromie was suddenly incapacitated by illness immediately prior to or at the time of the accident.

While the defendant is entitled to have inferences drawn in his favor such inferences must be reasonably based on facts established in evidence and not based merely on conjecture or other inferences. Rekart v. Safeway Stores, Inc., supra. The record fails to disclose such facts.

Reversed and a new trial granted.

It is so ordered.

WOOD, C. J., and COWAN, J., concur.