830 P.2d 183
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Carlton BROWN, Defendant–Appellant.**

**No. 12871.**

Court of Appeals of New Mexico.

March 9, 1992.

Certiorari Denied April 15, 1992.

Tom Udall, Atty. Gen., Margaret Mc-Lean, Asst., Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Gina Maestas, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from his conviction of two counts of larceny under $100, contrary to NMSA 1978, Section 30–16–1 (Cum.Supp. 1990) (petty misdemeanor), one count of larceny over $250, contrary to Section 30–16–1 (fourth degree felony), and one count of residential burglary, contrary to NMSA 1978, Section 30–16–3(A) (Repl.Pamp.1984) (third degree felony), contending (1) the two convictions for larceny under $100 merged, and (2) there was insufficient evidence to support the conviction for larceny over $250. We agree that the convictions for larceny under $100 merged and remand for resentencing. We affirm the conviction for larceny over $250.

### I.

Julie Oliver and Vivian Adams lived at 611 Lead, S.W., Apartment 706, in Albuquerque. A little after 6:00 a.m. on March 17, 1990, Oliver awakened and discovered Defendant sleeping on the living room couch. She summoned the police. Defendant told the police that an acquaintance had let him in with a key and had then departed. Oliver's backpack was on the patio next to Defendant's bicycle. Inside the backpack were a Sony compact disc player and eight compact discs. Defendant said that the items on the patio belonged to him. Adams's gloves were found in Defendant's pocket and her briefcase was found outside on the lawn. Officer Trout found two screwdrivers lying under a front window of the women's apartment.

The police found several hundred dollars in Defendant's pockets. Officer Wood asked Defendant where he obtained the money, and he replied that he had been paid. He did not have any documentation.

James Molling and Chad Bridges lived at 611 Lead, S.W., Apartment 722. At approximately 9:00 a.m. on March 16, 1990, Molling noticed that a Sony compact disc player owned by Bridges and approximately $400 in $20 bills were missing. Bridges had purchased the player for $100. Bridges noticed later that six of his compact discs were missing. The police gave the money found in Defendant's pockets to Molling.

A grand jury indicted Defendant for two counts of residential burglary, one count of larceny over $250, and two counts of larceny under $100. One of the counts of larceny charged Defendant with taking Adams's gloves and briefcase; the other charged him with taking Oliver's backpack. The trial court directed a verdict regarding one count of residential burglary.

### II.

■ Defendant argues that his two convictions for larceny of the items taken from Oliver and Adams must merge under the single larceny doctrine. Under that doctrine, the stealing of property from different owners at the same time and the same place constitutes only one larceny. *See generally* Daniel H. White, Annotation, *Single or Separate Larceny Predicated upon Stealing Property from Different Owners at the Same Time*, 37 A.L.R.3d 1407 (1971 & Supp.1991). We conclude that *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991), controls the disposition of this appeal and that under the analysis adopted by the supreme court in *Herron*, Defendant's convictions do merge. We also conclude that as a result of *Herron*, we should now recognize the validity of the single larceny doctrine in New Mexico.

In *Herron*, the supreme court held that numerous convictions for criminal sexual penetration violated guarantees against double jeopardy because they subjected the defendant to multiple punishments for the same offense. In making this determination, the court first identified "the appropriate unit of prosecution" under the relevant statute. *Id.* at 359, 805 P.2d at 626. Absent legislative intent that non-distinct

acts could be punished separately, the court required proof that each act charged was in some sense distinct from the others charged. *See State v. Mares*, 112 N.M. 193, 812 P.2d 1341 (Ct.App.1991) (adopting the approach used in *Herron* to allegations of multiple batteries). We apply the same analytical approach. Under that approach, the first inquiry is how the legislation has defined the crime.

 Section 30–16–1 defines larceny as "the stealing of anything of value which belongs to another." This court has said that in prosecuting larceny, the state need not prove ownership in a particular person; proof that the property belonged to someone other than the defendant is sufficient. *State v. Ford*, 80 N.M. 649, 459 P.2d 353 (Ct.App.1969). Nothing in the statutory language indicates that the legislature intended to create a separate offense for each taking of property belonging to different persons during a continuous episode. *Cf. State v. Callaghan*, 33 Or.App. 49, 576 P.2d 14, 19–20 (1978) (where legislature had expressed its intent that where there were multiple victims, multiple counts were proper, evidence that the defendant at one time and in one place withheld property from twenty different victims supported his conviction of twenty separate theft offenses). We conclude that the legislative intent is ambiguous. Any doubt will be resolved against construing ambiguous legislative intent in favor of allowing multiple punishments for one act. *Herron v. State*. The remaining question is whether, under *Herron*, the two acts charged as larcenies under $100 were separate and distinct.

 *Herron* set forth a number of factors to be considered in reviewing acts of criminal sexual penetration occurring during a single attack. *Mares* paraphrased those factors so they could be applied to allegations of multiple batteries. We further refine the factors for application in this multiple larceny case. They include the time between the criminal acts, the location of the property when it was taken, the existence of any intervening events, distinctions in the manner of committing the thefts, the defendant's intent, and the number of victims.

There was evidence that Adams's gloves were taken from her bedroom or the kitchen, that her briefcase was taken from her bedroom closet or the living room, and that Oliver's backpack was taken from the room in which she slept, which was the den, in the same apartment. The State argues that this evidence establishes that the items were taken from different locations and must have been taken at different times. However, a brief interval between thefts makes no difference if they were part of the same transaction. *State v. Sampson*, 157 Iowa 257, 138 N.W. 473 (1912) (theft of roommates' possessions from different places in the same room); *cf. State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984) (successive takings from a single owner pursuant to a single, sustained criminal impulse constitute a single larceny regardless of the time which may elapse between each act). Furthermore, the fact that Defendant took the items from different rooms in the apartment and that the items were separately owned by the two roommates does not establish that they were not part of the same transaction. *See Hudson v. State*, 9 Tex.App. 151 (1880) (thefts of items owned by different persons from different rooms in a family residence). There was no evidence, for example, that Adams and Oliver did not have common rights in the location from which the other's property was stolen. *Cf. State v. Bolen*, 88 N.M. 647, 545 P.2d 1025 (Ct.App. 1976).

Adams's and Oliver's possessions were subsequently recovered from different locations in and near their apartment. The State contends that this evidence establishes two distinct criminal intents. We disagree. The fact that Defendant placed the items in different places after he seized them is not probative of two distinctive general intents when he committed the thefts.

There was no evidence that a significant period of time separated the thefts, that the items were taken from locations in which the other owner had no substantial

rights, that the thefts were accomplished in diverse manners, that Defendant's intent in committing the two thefts was different, or that the larcenies were separated by an intervening event. The only factor weighing in favor of separate offenses is the number of victims. Multiple ownership alone will not support multiple convictions. *See State v. Klasner*, 19 N.M. 474, 145 P. 679 (1914). At most, Defendant could be found guilty of one larceny under $100.

*Bolen* indicates that under the single larceny doctrine, " '[t]he stealing of property from different owners at the same time and at the same place constitutes but one larceny.' " 88 N.M. at 647, 545 P.2d at 1025 (quoting 2 Ronald A. Anderson, *Wharton's Criminal Law and Procedure* § 451 (1957)). *See generally* 3 Charles E. Torcia, *Wharton's Criminal Law* §§ 358, 359 (14th ed. 1980) (discussing "Single or multiple larcenies; same owner" and "— Different owners"). "The underlying theory is that there is only one taking." *Id.* § 359, at 314–16. As we understand the doctrine, had we applied it rather than *Herron*, we would have reached the same result. Under these circumstances, we conclude that as a result of *Herron*, we should recognize the validity of the single larceny doctrine.

We note, however, that in at least one jurisdiction the analysis of robbery counts differs from the analysis of larceny counts. *Compare State v. Mills*, 671 S.W.2d 437 (Mo.Ct.App.1984) (defendant properly convicted of five separate robberies where he simultaneously robbed five persons in a bar) *with White v. State*, 694 S.W.2d 825 (Mo.Ct.App.1985) (there was only one robbery where the defendant, after threatening an employee with a gun and removing his keys, helped himself to company funds and also to the employee's wallet). There may be a legal foundation for a similar distinction in New Mexico. In robbery, unlike larceny, the legislature has defined a crime that includes the element of "use or threatened use of force or violence." NMSA 1978, § 30–16–2 (Repl.Pamp.1984). Thus, in robbery, unlike larceny, the number of victims may be sufficient to support

separate convictions. *Id.* That issue, however, is not before us.

## III.

■ Defendant contends that since the trial court granted a directed verdict with respect to the charge of residential burglary of the men's apartment, it follows that the evidence was insufficient to establish that Defendant stole items from the apartment because the only way he could have obtained them was through a burglary. Defendant does not cite any authority to support his contention. *See In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984) (issues not supported by cited authority not considered). Furthermore, the elements of larceny and residential burglary are dissimilar. *Compare* § 30–16–1 *with* § 30–16–3. We are not persuaded that the directed verdict on the second residential burglary count requires reversal of the related larceny count. *See State v. McAfee*, 78 N.M. 108, 428 P.2d 647 (1967) (larceny is not necessarily involved in burglary); *see also State v. Leyba*, 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct.App.1969) (acquittal, even though irreconcilable with conviction on a different count, does not require conviction to be set aside). "Our business is to review the verdict of conviction." *Id.*

■ Defendant also argues that while the jury could have inferred that the compact disc player found on the women's patio belonged to Bridges, the money found in Defendant's pockets could have belonged to Defendant, and possession of the allegedly stolen items was insufficient to establish that Defendant took them from the men's apartment. We disagree.

The jury was not required to draw an inference favorable to Defendant with respect to the ownership of the money. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978) (on review of a conviction, we indulge in all permissible inferences in favor of the verdict). Where other circumstances are present linking Defendant with a theft, possession of the stolen property combined with the other circumstances can justify such a conviction. In *State v. Aragon*, 109

N.M. 632, 788 P.2d 932 (Ct.App.1990), we considered such circumstances as similarity in the method of carrying out the crimes, temporal and geographical connections between crimes, and a taped conversation in which the defendant made several statements implying that he committed the burglaries. In this case, there was evidence that Molling was missing approximately $400 and that Defendant had Bridges' compact disc player in his possession. There was a temporal and geographical connection between the theft of Molling's money and Defendant's apprehension with a large sum of money. The women's apartment was burglarized within the same twenty-four hour period in which the items were stolen from the men's apartment, and Defendant was apprehended while still at the same street address of both apartments. Under these circumstances, the jury was entitled to infer that the funds found in Defendant's pocket belonged to Molling. *See Dull v. Tellez*, 83 N.M. 126, 489 P.2d 406 (Ct.App.1971) (reasonable inference is a rational and logical deduction from facts established by the evidence, when such facts are viewed in the light of common knowledge or common experience).

Defendant argues that *Aragon* is distinguishable. In this case, there was no taped conversation and there was no evidence that the two residential burglaries were accomplished in the same manner. While we agree that there are differences in the evidence in *Aragon* and the evidence offered in this case, we are not persuaded by those differences that the evidence in this case is insufficient.

## IV.

Defendant's conviction for larceny over $250 is affirmed. We affirm one of the two convictions for larceny under $100, and we reverse the judgment and sentence of the district court, remanding with instructions to vacate one of Defendant's convictions for larceny under $100, to impose a new sentence, and to enter an amended judgment and sentence. *See Herron v. State.*

IT IS SO ORDERED.

ALARID, C.J., and BLACK, J., concur.