This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36417**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LAFAYETTE STONE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Lafayette Stone appeals his convictions for aggravated battery with a deadly weapon, contrary to NMSA 1978, § 30-16-4(A) (1963), and felony shoplifting, contrary to NMSA 1978, § 30-16-20 (2006). Defendant raises the following issues on appeal: (1) the omission of a deadly weapon instruction in the aggravated battery with a deadly weapon count resulted in fundamental error; and (2) there was insufficient evidence to support his convictions for aggravated battery and felony shoplifting. We agree that the jury instruction for the charge of aggravated battery with a deadly weapon

resulted in fundamental error, reverse Defendant's conviction for that charge and remand for a new trial. We affirm the sufficiency of the evidence supporting Defendant's felony shoplifting conviction.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we briefly set out the following facts taken from testimony presented at trial and reserve discussion of additional facts as necessary for our analysis.

**{3}** Early one morning, a security guard working at an Albuquerque Wal-Mart received a request from the assistant manager to prevent a male dragging a large suitcase from leaving the store. Soon after receiving the request, the security guard saw a male, later identified as Defendant, dragging a large suitcase towards the exit. The security guard asked Defendant if he had a receipt for the suitcase. Defendant responded, "No." The security guard then reached for the suitcase, at which point Defendant swung at the security guard, hitting him on the left side of his ribs and against his left forearm. The security guard felt a scrape on his forearm, immediately jumped back, and saw a "small, black folding knife," with a partially serrated blade in Defendant's hand. The security guard believed the scratch was caused by the knife, and described the scratch as "pretty shallow, a little bit of blood, not very deep [or] . . . life threatening."

**{4}** Defendant backed out of the store while facing the security guard and fled with the suitcase. Another security guard called the police as he watched Defendant's direction of flight. A dispatch operator provided Officer Casey Ramos with the Albuquerque Police Department, and Detective Tyler Burt with Defendant's physical description, and further advised them that Defendant boarded a bus traveling west on Central. The Albuquerque Transit Center stopped the bus on which Defendant was riding. Officer Ramos and Detective Burt boarded the bus and saw Defendant with a large suitcase that had an item that looked "brand new right out of the store" sticking out of it.

**{5}** The officers removed Defendant from the bus and placed him under arrest. Detective Burt removed "a small pocketknife" from Defendant's front right pocket while performing a weapons patdown. The following items were discovered inside Defendant's suitcase: a laptop computer, three Blu-ray DVD players, two Xbox games, a play station game, several items of clothing, and various health and beauty supplies. All of the merchandise had Wal-Mart tags, as did a shirt Defendant was wearing at the time of his arrest. The combined value of the merchandise inside the suitcase was $730.78.

**{6}** After listening to the above testimony, a jury convicted Defendant of shoplifting property with a value over $500 but not more than $2,500 and aggravated battery with a deadly weapon. This appeal followed.

**DISCUSSION**

**Jury Instruction**

**{7}**     Defendant contends the district court erred by failing to instruct the jury on an essential element of aggravated battery with a deadly weapon, namely that the jury must find that the knife at issue was a deadly weapon. *See* NMSA 1978, § 30-1-12(B) (1963) (defining the term "deadly weapon"). As Defendant concedes that he did not preserve this error, we review for fundamental error. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 ("Generally, to preserve error on a trial court's refusal to give a tendered instruction, the [a]ppellant must tender a legally correct statement of the law."); *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Because [the d]efendant failed to preserve any error . . . we review only for fundamental error.").

**{8}**     Fundamental error occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶ 17. When this Court reviews jury instructions for fundamental error, we will reverse the jury verdict only if doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). In reviewing a district court's failure to instruct, "[w]e must determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Barber*, 2004-NMSC-019, ¶ 19. "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{9}**     The State charged Defendant with aggravated battery with a deadly weapon for cutting the security guard's forearm with the pocketknife. *See* § 30-16-4(A). The jury was instructed that in order to find Defendant guilty, it had to find, in relevant part that (1) "[D]efendant touched or applied force to [the security guard] by striking and making contact with his arm with a knife"; and (2) "[D]efendant intended to injure [the security guard.]" Defendant argues the district court should have instructed the jury to find that the knife constituted a deadly weapon because it is not specifically enumerated as a deadly weapon under Section 30-1-12(B). We agree.

**{10}**   Our Supreme Court explained that "if the item is specifically listed in Section 30-1-12(B), it is considered a deadly weapon as a matter of law. If the item is not specifically listed, the question of whether the object is a deadly weapon should be given to the jury to decide." *State v Traeger*, 2001-NMSC-022, ¶ 12, 130 N.M. 618, 29 P.3d 518; *see State v. Nick R.*, 2009-NMSC-050, ¶ 37, 147 N.M. 182, 218 P.3d 868 ("[O]ur cases hold that in an actual use case involving an unlisted weapon, the jury must find, among other elements, that an object was actually used as a weapon and that it was capable of causing the wounds described in the statute. . . . These are determinations that cannot be ruled on by a trial court as a matter of law and taken from

the jury's consideration, no matter how obvious the existence of any essential element of an offense may seem."). A pocketknife is not a per se deadly weapon under Section 30-1-12(B). *Nick R.*, 2009-NMSC-050, ¶ 49. Thus, the jury was required to find that the pocketknife Defendant used to commit the aggravated battery was "capable of producing death or great bodily harm." Section 30-1-12(B); UJI 14-322 NMRA; *see Nick R.*, 2009-NMSC-050, ¶ 37. The jury instructions in this case omitted this element and were, therefore, erroneous. Nonetheless, we must continue our analysis to determine whether this omission rises to the level of fundamental error.

**{11}** The State advances two arguments as to why the omission of an essential element from the jury instructions did not result in fundamental error. First, the State argues that there was no fundamental error because the deadly weapon element was established at trial. *See State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146 (stating that reversal is not required where "there can be no dispute that the element was established"). Specifically, the State argues that after viewing the photographs of the knife, which "plainly show that this is a sharp, pointed, tactical knife, with a blade approximately three inches long[, n]o rational jury . . . could have concluded that this was not a knife that, 'when used as a weapon, could cause death or great bodily harm.' " Although the State introduced photographs of a pocketknife with a blade approximately three inches in length, we reject the notion that a photograph of a small knife with a three-inch blade, standing alone, is sufficient to establish that the knife, when used as a weapon, could cause death or great bodily harm. To do so would broadly criminalize the possession of any three-inch pocketknife, not all of which are deadly weapons as a matter of law, and would be contrary to our established case law holding that "in an actual use case involving an unlisted weapon, the jury *must find*, among other elements, that an object was actually used as a weapon and that it was capable of causing the wounds described in the statute." *Nick R.*, 2009-NMSC-050, ¶ 37 (emphasis added).

**{12}** Additionally, although Defendant used the knife to cut the security guard, the security guard described his wound as "pretty shallow" and "[n]othing life threatening," which distinguishes this case from others in which we have declined to find fundamental error based on the defendant's actual use of the weapon to inflict great bodily injury. *Cf. Traeger*, 2001-NMSC-022, ¶ 25 (concluding that "it [did] not shock the conscience or implicate a fundamental unfairness within the system to affirm the [d]efendant's conviction" where the defendant used a baseball bat to "shatter" the victim's foot (internal quotation marks and citation omitted)).

**{13}** Second, the State argues that the knife "appears to be a switchblade" which is a per se deadly weapon under Section 30-1-12(B). However, no evidence in the record suggests that the knife Defendant used to commit the aggravated battery was a switchblade. To the contrary, the security guard described the knife as a "small, black folding knife," and the officer who removed the knife from Defendant's front right pocket described it as a "small pocketknife." In addition, the officer who photographed the knife prior to tagging it into evidence described it as "[b]asically just a black blade, black-handled folding knife." Given these descriptions, and given our independent review of

the photographic exhibits introduced at trial, we are unpersuaded by the State's speculation of what the knife appears to be.

**{14}** For these reasons, we conclude that Defendant's conviction for aggravated battery with a deadly weapon resulted in fundamental error. Accordingly, we reverse Defendant's conviction for aggravated battery with a deadly weapon.

**Sufficiency of the Evidence**

**{15}** Defendant additionally argues there was insufficient evidence to support his convictions for aggravated battery with a deadly weapon and felony shoplifting. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{16}** We first address the sufficiency of the evidence supporting Defendant's conviction for aggravated battery with a deadly weapon despite having reversed that conviction for fundamental error. *See State v. Mascarenas*, 2000-NMSC-017, ¶ 31, 129 N.M. 230, 4 P.3d 1221 (providing that retrial following an appeal is not barred if the evidence below was sufficient to support a conviction under the erroneous jury instruction). Defendant contends the evidence was insufficient to support his conviction for aggravated battery with a deadly weapon because the State not only had to prove that he applied force to the security guard with a knife and intended to injure him, but that the knife he used was a deadly weapon. Defendant specifically argues that the evidence that he scratched the security guard on the arm with the knife was insufficient to show that he used the knife in a manner whereby great bodily harm or death could be inflicted.

**{17}** In order to convict Defendant of aggravated battery with a deadly weapon, the jury was instructed that it had to find in relevant part that: (1) "[D]efendant touched or applied force to [the security guard] by striking and making contact with his arm with a knife"; and (2) "[D]efendant intended to injure [the security guard.] This instruction did not require the jury to find that the knife was a deadly weapon. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{18}** The State presented evidence that when the security guard reached towards the suitcase Defendant was attempting to leave with, Defendant swung at and struck the security guard on the left side of his ribs and against his left forearm. The security guard

felt a scrape on his forearm and saw a small, black folding knife, with a partially serrated blade in Defendant's hand. The security guard believed the scratch was caused by the knife. Defendant then fled with the suitcase and its contents.

**{19}** Viewing this evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, *Cunningham*, 2000-NMSC-009, ¶ 26, a reasonable jury could conclude that Defendant intended to injure the security guard when he scratched his arm with the knife in an attempt to preclude the security guard from gaining control of the suitcase. We therefore conclude that the evidence was sufficient to support Defendant's conviction for aggravated battery with a deadly weapon under the instruction given at trial and retrial following this appeal is not barred. *See Smith*, 1986-NMCA-089, ¶ 7 (explaining that sufficiency of the evidence is measured by the jury instruction given at trial); *see also Mascarenas*, 2000-NMSC-017, ¶ 31 (holding that retrial is not barred if evidence was sufficient to convict under the erroneous jury instruction given at trial).

**{20}** With regard to his shoplifting conviction, Defendant argues that while store employees saw him take a laptop and Blu-ray players into the restroom and then leave the restroom with a suitcase, the store employees did not observe him take the other merchandise that was later found in his suitcase into the bathroom. Based on these facts, Defendant contends there is insufficient evidence of concealment of those items that contributed to the market value that made his shoplifting offense a felony instead of a misdemeanor. We disagree.

**{21}** Consistent with UJI 14-1610 NMRA, the jury was instructed that in order to convict defendant of shoplifting (over $500 but not more than $2,500), it had to find, in relevant part, that (1) "[D]efendant concealed electronics, personal toiletry supplies, and console games, among other items"; and (2) "[t]his merchandise had a market value over $500[.]" The State presented evidence that Defendant left the store without paying for anything concealed in his suitcase. When a security guard asked Defendant if he had a receipt for the suitcase, Defendant said, "No" and used a knife to keep the security guard from taking possession of the suitcase. Defendant then fled the store. The evidence further revealed that upon Defendant's arrest, officers discovered various items with Wal-Mart price tags inside Defendant's suitcase indicating that the combined value of the merchandise was $730.78. From this evidence a jury could reasonably infer that Defendant had concealed all of the Wal-Mart merchandise inside the suitcase before fleeing the store. *See State v. Jacobs*, 2000-NMSC-026, ¶ 15, 129 N.M. 448, 10 P.3d 127 (recognizing that evidence of flight tends to show a consciousness of guilt); *Dull v. Tellez*, 1971-NMCA-133, ¶ 13, 83 N.M. 126, 489 P.2d 406 (defining a reasonable inference as "a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in light of common knowledge or common experience"). We, therefore, conclude the evidence was sufficient to support Defendant's felony shoplifting conviction.

**CONCLUSION**

**{22}** For the foregoing reasons, we reverse Defendant's aggravated battery with a deadly weapon conviction and remand for a new trial. We affirm Defendant's felony shoplifting conviction.

**{23}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**