This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41461**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DERRON ARAGON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Bruce Fox, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**BACKGROUND**

**{2}** Defendant's convictions stem from an incident that occurred on September 11, 2020, at a travel stop on I-40 outside Albuquerque. [BIC 1] A patron, Ms. Graddy, observed a man pulling a woman across a parking lot toward a rocky landscaped depression. [BIC 1] At roughly the same time another patron, Mr. Miller, saw Defendant running across the parking lot toward the same area. [BIC 2] Shortly thereafter Ms. Graddy heard yelling, and when she approached she saw Defendant hitting the woman she had seen earlier. [BIC 2] Both Defendant and the woman had their pants down, and the woman was pleading for help. [BIC 2] Ms. Grady yelled out, "He's raping her!" [BIC 2] Defendant, who was on his knees holding the woman with his left hand, turned toward Ms. Grady and said, "Get the f**k out of here. This doesn't concern you." [BIC 2] When Defendant turned toward her, Ms. Graddy saw his penis inside the woman. [BIC 2] Mr. Miller tried to intervene while Ms. Graddy called the police. [BIC 2]

**{3}** Deputy Pryde and Deputy Tuell arrived less than five minutes later. [BIC 3] Mr. Miller waved them down and directed them toward the rocky depression. [BIC 3] Deputy Pryde saw Defendant and the woman with their pants down, lying on their left sides. [BIC 3] Defendant had his arms around the woman's neck in a sort of headlock. [BIC 3] Although Defendant's groin area was pressed against the woman's buttocks, neither deputy ever saw Defendant penetrate the woman. [BIC 3] The officers drew their guns and began yelling commands to release the woman. [BIC 3] Defendant failed to comply, and Deputy Tuell then tried to separate Defendant from the woman by forcing himself between them, while Deputy Pryde tried to pry Defendant' arms off of her neck. [BIC 4] The woman was crying and yelling, Officer Tuell testified that he feared that Defendant was endangering her life by restricting her breathing. [BIC 8] The officers warned Defendant that they were going to strike him if he did not release her. [BIC 4] Defendant failed to do so, claiming he was not doing anything. [BIC 4] Ultimately Deputy Pryde punched Defendant in the ribs four times before Deputy Tuell finally succeeded in physically separating Defendant from the woman. [BIC 4]

**{4}** After hearing the testimony at trial, the jury found Defendant guilty of criminal sexual penetration (CSP), false imprisonment, and resisting, evading or obstructing an officer. [BIC 11] The instant appeal followed.

**DISCUSSION**

**I. Double Jeopardy**

**{5}** Defendant contends that his convictions for CSP and false imprisonment violate double jeopardy. [BIC 12-18] We review issues of this nature de novo. *See State v. Loza*, 2018-NMSC-034, ¶ 4, 426 P.3d 034 (We "review[] claims involving alleged violations of a defendant's right to be free from double jeopardy de novo.").

**{6}** As an initial matter, Defendant contends that the restraint of the victim for the false imprisonment charge was "incidental" to the commission of CSP, and should be

vacated on that basis. [BIC 14-16] In support of this argument Defendant relies on *State v. Trujillo*, 2012-NMCA-112, ¶ 29, 289 P.3d 238, in which we held "the Legislature did not intend to punish as kidnapping restraint or movement that is merely incidental to another crime." However, *Trujillo* pertains specifically and exclusively to the offense of kidnapping. *See id.* ¶¶ 23-42 (considering the history of the kidnapping statutes and the serious nature of that offense, while also emphasizing that we were specifically considering whether the Legislature intended the defendant's conduct to constitute kidnapping under the factual circumstances of that case). To the extent that Defendant invites this Court to extend *Trujillo* to the situation at hand, we decline to do so.

{7}    In addition to his invocation of *Trujillo*, Defendant advances a traditional double-description challenge to his convictions for false imprisonment and CSP. [BIC 16-18] Challenges of this nature require that we first determine whether the conduct was unitary. *State v. Torres*, 2018-NMSC-013, ¶ 18, 413 P.3d 467. Conduct is not unitary if "sufficient indicia of distinctness separate the illegal acts" so that the "defendant does not face conviction and punishment for the same factual event." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 (internal quotation marks and citation omitted). "Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *Id.*

{8}    As a general matter, it is well established that force or coercion exerted before or after a sexual offense may support a separate conviction for false imprisonment. *See id.* ¶¶ 46, 56 (providing that "[u]nitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime" and holding that there was no unitary conduct where there were "separate, identifiable batteries separated by sufficient indicia of distinctness" to support the aggravated burglary and CSP convictions); *State v. Corneau*, 1989-NMCA-040, ¶¶ 11, 15, 109 N.M. 81, 781 P.2d 1159 (distinguishing restraint preceding or following criminal sexual penetration from the restraint "necessarily involved in almost every act of CSP"). "The key consideration is whether the same force was used to commit both crimes." *State v. Montoya*, 2011-NMCA-074, ¶ 31, 150 N.M. 415, 259 P.3d 820.

{9}    In this case, Defendant exerted separate force in connection with the two offenses, which were completed at different times. Defendant's conviction for CSP is premised upon his use of physical force to penetrate the victim's vagina. [BIC 13; RP 249] In support of this conviction, Ms. Grady testified that she saw Defendant hitting the victim and holding her with his left hand while penetrating her vagina. [BIC 2] Defendant's conviction for false imprisonment is premised upon his restraint of the victim against her by holding her in a headlock. [BIC 13; RP 249-50] In support of this conviction, Deputies Pryde and Tuell testified that that when they subsequently arrived, they did not see Defendant hitting or penetrating the victim; they observed Defendant restraining the victim with his arms around her neck. [BIC 3-4] This constitutes non-unitary conduct. *See Corneau*, 1989-NMCA-040, ¶ 16 (observing that "any restraint after the completed CSP is separate from the CSP itself, not inherent in the CSP, and

does not constitute the same 'force or coercion' necessary to establish CSP" for double jeopardy purposes). "If the conduct is non-unitary, multiple punishments do not violate the Double Jeopardy Clause, and our analysis ends." *State v. Armendariz*, 2006-NMCA-152, ¶ 6, 140 N.M. 712, 148 P.3d 198. We therefore reject the double jeopardy challenge to Defendant's convictions for CSP and false imprisonment.

## II.     Sufficiency of the Evidence

**{10}**   Defendant also challenges the sufficiency of the evidence to support his conviction for resisting, evading or obstructing an officer. [BIC 18-22]

**{11}**   "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Gallegos*, 2009-NMSC-017, ¶ 30, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted).

**{12}**   In order to support a conviction for resisting, evading or obstructing an officer in this case, it was incumbent upon the State to establish that on the date in question: (1) Deputy Pryde and/or Deputy Tuell were peace officers in the lawful discharge of duty; (2) Defendant knew this; and (3) Defendant resisted or abused Deputy Pryde and/or Deputy Tuell in the lawful discharge of their duties. [RP 203] *See* NMSA 1978, § 30-22-1(D) (1981) (defining the offense in relevant part); *see also* UJI 14-2215 NMRA (describing essential elements of the crime of resisting, evading or obstructing an officer).

**{13}**   As briefly described above, the evidence at trial established that Deputies Pryde and Tuell responded to the scene in their capacities as law enforcement officers. [BIC 3] Upon observing Defendant with his pants down and his arms wrapped around the woman's neck, they drew their guns and immediately began yelling and commanding Defendant to release her. [BIC 3] Defendant failed to comply, and they were compelled to use physical force. [BIC 3-4] This evidence is sufficient to support his conviction. *See State v. Jimenez*, 2017-NMCA-039, ¶ 39, 392 P.3d 668 (stating that "[o]ur cases illustrate that . . . a person can violate [Section 30-22-1(D)] . . . by avoiding doing something required, including refusing to comply with an officer's orders"); *State v. Diaz*, 1995-NMCA-137, ¶¶ 16-23, 121 N.M. 28, 908 P.2d 258 (providing that resisting refers not only to a defendant's overt physical acts, but also to the failure to act when refusing to obey lawful police commands).

**{14}**   Defendant's challenge focuses on the second element of the offense. [BIC 19-22] Because the requisite knowledge is seldom subject to direct proof, it may be established through circumstantial evidence, such as the fact that the officers were "in full uniform, [and] had a badge visibly displayed," inter alia. *State v. Nozie*, 2009-NMSC-018, ¶ 32,

146 N.M. 142, 207 P.3d 1119. As previously described, the evidence presented at trial established that Deputies Pryde and Tuell were in uniform and displaying badges. [BIC 3, 10] Moreover, they loudly addressed Defendant in an authoritative fashion, and they ultimately intervened in a manner, which placed them in close physical proximity to Defendant, such that their uniforms would have been readily observable. [BIC 20] Additionally, in the course of a subsequent interview Defendant indicated that he remembered officers hitting him and trying to pull him off of the woman. [BIC 10] This evidence supplies ample support for an inference of the requisite knowledge. *See State v. Bell*, 1977-NMSC-013, ¶ 15, 90 N.M. 134, 560 P.2d 925 ("The jury is entitled to rely upon rational inferences deducible from the evidence."); *Dull v. Tellez*, 1971-NMCA-133, ¶ 13, 83 N.M. 126, 489 P.2d 406 (explaining that a reasonable inference is a "rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in light of common knowledge or common experience"). The conflicting evidence and inferences upon which Defendant relies do not require a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary. Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Accordingly, we reject Defendant's challenge to the sufficiency of the evidence.

**CONCLUSION**

**{15}** For the foregoing reasons, we affirm.

**{16}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**